Albert **MONREAL**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 04–92–00481–CR.

Court of Appeals of Texas, San Antonio.

March 13, 1996.

Discretionary Review Granted June 26, 1996.

## ON REMAND FROM THE TEXAS COURT OF CRIMINAL APPEALS

GREEN, Justice.

This case returns to us by remand from the Court of Criminal Appeals.

■ Albert Monreal was indicted for aggravated sexual assault and indecency with a child. He was tried before the court and found guilty. His punishment was assessed at ninety-nine years imprisonment. Monreal appealed to this court, which affirmed his conviction. *Monreal v. State*, No. 04–92–00481–CR (Tex.App.—San Antonio, March 9, 1994) (not designated for publication). Monreal's petition for discretionary review was granted by the Court of Criminal Appeals. *Monreal v. State*, No. 457–94 (Tex.Crim. App., March 15, 1995). That court has now remanded the case back to this court for the limited purpose of determining whether *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) or *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) controls Monreal's claim that he was denied effective assistance of counsel.

### Facts

During a pretrial hearing while a jury panel was waiting on call, Monreal's attorney waived the right to a jury trial and asked the court to go on record "to protect myself." The record reflects the following exchange took place.

[Court]: You all when you were reading your Motion to the record, the first thing that came to my mind is that's a question of fact for the trier of fact to decide. The motion will be denied.

You want to waive a jury just to get to the heart of the matter fast? I don't have any opposition to that.

[Prosecutor]: I'll waive a jury. I don't have any problem with that.

[Defense Counsel]: We did the previous time, yeah; but we have a plea bargain on June the 10th, which, of course, *I want to go on the record about that also, to protect myself.*

Richard Lee Urban, Boerne, for Appellant.

Angela Moore, Assistant Criminal District Attorney, San Antonio, for Appellee.

Before HARDBERGER, GREEN and DUNCAN, JJ.

[Court]: Cancel the jury.

(emphasis added).

After the State presented its case, the following exchange took place:

[Defense Counsel]: Your Honor, I forgot to just go on the record as to the plea negotiations that were rejected on June the 10th, 1992. I need to do that.

[Court]: Put it in the record.

[Defense Counsel]: Should I have Mr. Monreal affirm that?

[Court]: Yes. All three of you.

\*　　\*　　\*　　\*　　\*　　\*

[Defense Counsel]: I'm Barbara Slavin. I'm the Court-appointed defense attorney. For purposes of perfecting the record as to my representation and prior plea negotiations, I'm going to ask Mr. Monreal some questions relating to the previous plea bargaining negotiations.

Mr. Monreal, in late May of 1992, do you recall contacting me by phone indicating you were, for lack of better words, fairly stressed out and anxious to get out—

[Monreal]: Yes, I was very anxious.

Q: —out of jail. At that time, did you ask me to try to negotiate a plea bargain in your behalf?

A: Well, we had a misunderstanding, Barbara. We were supposed to have trial already, and I wanted to come to trial as soon as possible.

Q: Right. But in lieu of the fact that there had been two and three month intervals between trial settings, did you not indicate that if I could get it reduced to something like eight years and getting rid of the aggravated and repeater counts, that you might consider the plea agreement?

A: Yes, I did.

Q: Okay. And did you not come to the courtroom of Master Andrew Carruthers, which was in this same building, on June the 10th, 1992? Do you recall that?

\*　　\*　　\*　　\*　　\*　　\*

A: Yes.

Q: And at that time, were you told that an offer had been made by [the State] to reduce the offense to indecency with a child, dropping the aggravated portions and removing the repeater count?

A: Yes, ma'am.

Q: And you did understand that you could have pled that day and gotten that plea bargain?

A: Yes, Ma'am.

Q: And you rejected it?

A: Yes, ma'am.

Q: Okay. And why did you reject it?

A: I'm not guilty, so why should I?

Q: Okay, That's all, Your Honor.

Monreal says on appeal that this exchange demonstrated ineffective assistance of counsel because it constituted a conflict of interest between the attorney and her client. Specifically, Monreal argues that trial counsel placed on the record the fact that Monreal had previously considered (although ultimately rejected) a plea bargain agreement in order for trial counsel to protect herself from future allegations that she had failed to comply with the requirement that she inform her client of any plea bargain offers. We are asked to determine whether the Sixth Amendment standard for ineffective assistance of counsel announced in *Cuyler* or *Strickland* applies to this situation.

### Ineffective Assistance of Counsel

 Most claims for ineffective assistance of counsel fall within the standard set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In that case, the court enunciated a two-part test for reviewing ineffective assistance of counsel claims. The defendant must first show that counsel's performance was so deficient, "that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. In order to meet the second part of the test the defendant must show that counsel's deficient performance so seriously prejudiced the defense that the defendant cannot be said to have received a fair trial. *Id. Strickland* governs claims of ineffective assistance of counsel based on attorney error.

■ However, claims of ineffective assistance of counsel involving conflicts of interest are controlled by *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). In that case, the Court held, "[i]n order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler*, 446 U.S. at 350, 100 S.Ct. at 1719, 64 L.Ed.2d at 346–47. Under the *Cuyler* test, the defendant is required to show that his counsel "actively represented conflicting interests" and, second, that "a conflict of interest actually affected the adequacy of his representation." *Cuyler*, 446 U.S. at 349–50, 100 S.Ct. at 1719.

The main difference between these two tests is that there is a lesser burden of proof when the claim of ineffective assistance of counsel involves a conflict of interest as opposed to a claim based on attorney error. The Supreme Court stressed this point in *Strickland:*

> [P]rejudice is presumed when a counsel is burdened by an actual conflict of interest. In these circumstances, counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties. Moreover, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests. Given the obligation of counsel to avoid conflicts of interest and the ability of trial courts to make early inquiry in certain situations likely to give rise to conflicts . . ., it is reasonable for the criminal justice system to maintain a fairly rigid rule of presumed prejudice for conflicts of interest. . . . Prejudice is presumed . . . if the defendant demonstrates that counsel "actively represented conflicting interests" and that "an actual conflict of interest *adversely affected his lawyer's performance.*"

*Strickland*, 466 U.S. at 692, 104 S.Ct. at 2067 (citation omitted; emphasis added).

Under *Strickland*, prejudice is not presumed. Instead, the defendant must show that there was error, and the error was "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687, 104 S.Ct. at 2064. However, under *Cuyler* a defendant must only show that his counsel's performance was "adversely affected" by a conflict of interest.

Monreal alleges that his case falls within the lesser *Cuyler* standard because he claims his lawyer's performance was adversely affected by a conflict of interest. Monreal claims that his interest in receiving effective representation and being acquitted of the crime charged was adversely affected by his counsel's interest in protecting herself from allegations that she did not inform Monreal of the State's plea bargain offer. We must decide whether *Cuyler* applies to this type of conflict of interest.

*Cuyler* involved a claim of conflict of interest in the context of an attorney representing multiple defendants in one criminal proceeding. This type of conflict normally involves the adverse interests of two or more defendants during trial. In plain language, the danger is that the lawyer might favor one defendant over another defendant to the latter defendant's detriment. The instant case involves a different type of conflict of interest. Here, the interests of the lawyer and her client are alleged to be conflicting.

### Discussion

We find no Texas cases addressing the issue of which standard to apply in cases involving conflicts between the interests of an attorney and that of his client. That precise question, however, has recently been thoroughly analyzed by the U.S. Court of Appeals for the Fifth Circuit. *See Beets v. Scott*, 65 F.3d 1258 (5th Cir.1995) (en banc), *petition for cert. filed*, 64 U.S.L.W. 3707 (U.S. Dec. 18, 1995) (No. 95–7279). In *Beets*, the conflict between the interests of the lawyer and the client related to the lawyer's status as a material witness and purported beneficiary of a media rights contract concerning the subject matter of his client's case. An examination of the facts of that case is necessary for an understanding of the nature of the conflict, and how it was alleged to affect the lawyer's performance.

Beets, represented by attorney Andrews, was convicted in a Texas court of the capital murder of her fifth husband. After state

appeals went unavailing, Beets sought habeas relief in the federal courts on the ground that Andrews had a conflict of interest that adversely affected his representation of her, and that she was thus deprived of her Sixth Amendment right to effective assistance of counsel.

Prior to the criminal charges being brought against Beets, Andrews had been hired by Beets to determine whether she was entitled to any insurance or pension benefits arising out of her husband's death. Initially, Beets entered into a contingent fee agreement with Andrews for these legal services. But before any benefits were realized from Andrews' efforts, Beets was charged with capital murder for killing her husband and burying him in the front yard of her home. It was charged as a capital crime because the killing had allegedly been committed for the purpose of collecting life insurance benefits. The body of a previous husband was also found buried in the back yard of the home.

Andrews agreed to represent Beets on the capital murder charge; however, he was unable to reach a satisfactory fee agreement with Beets's family. Therefore, because the case had by this time developed considerable notoriety, it was agreed that in exchange for Andrews' legal services Beets would assign to Andrews all of the literary and media rights in her case.

In seeking habeas relief, Beets claimed that Andrews was a material witness to the fact that she was unaware of her husband's potential death benefits (relevant to pecuniary motive) and that he should have resigned as her lawyer in order to testify to that fact. She additionally asserted that Andrews' self-interest in the media rights contract deterred him from resigning as her lawyer. Beets claimed that each of these conflicts of interest adversely affected Andrews' representation of her, thus depriving her of a fair trial.

The *Beets* court refused to expand *Cuyler* to the facts of the case, holding instead that the *Strickland* standard best addressed attorney self-interest conflicts: "... *Strickland* more appropriately gauges an attorney's conflict of interest that springs not from multiple client representation but from a conflict between the attorney's personal interest and

that of his client." *Beets,* 65 F.3d at 1260, 1271–72. We agree.

 When a lawyer undertakes to simultaneously represent multiple criminal defendants, the risks of prejudice to one client or the other are so great that the law imposes an automatic presumption of prejudice. *See Cuyler,* 446 U.S. at 349, 100 S.Ct. at 1719. It is hard to imagine a circumstance where a lawyer can properly represent the interests of two or more clients in the same criminal proceeding. The duty of loyalty to any single client is so strong that it is in direct and actual conflict with the notion of representing another client in the same matter. The effect of this conflict is best exhibited in the blame-shifting defense—the other guy did it. If a lawyer represents two or more defendants in the same matter, he is legally and ethically deprived of the time-honored defense of blaming the other defendant. Under those circumstances, the automatic presumption of prejudice is quite valid.

But where the conflict is one of self-interest, the conflict does not necessarily result in harm to the client. Insofar as the protections to the client are concerned, it does not follow that a client will be denied a fair trial simply because his lawyer has a self-interest at stake. Granted, in looking out for himself, a lawyer may do or fail to do something that causes damage to his client's case. But this is not always true. A lawyer's personal interest conduct may very well have no effect on whether or not his client receives a fair trial. The "consequences [of self-interest conflicts] on the quality of representation range from wholly benign to devastating." *Beets,* 65 F.3d at 1271.

 No presumption of prejudice arises out of the self-interest conflict—to establish ineffective assistance of counsel, the client must prove prejudice. The client must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

 Monreal's lawyer was interested in "protecting" herself from subsequent criticism of her representation of Monreal. Ac-

cordingly, she placed into the record the fact that Monreal had asked her to seek out a plea bargain, and then recorded the fact that she had duly and properly communicated to her client the plea bargain offered by the State. It is quite understandable why she would want to do this. The realities of criminal appellate practice being what they are, she knew that the failure to document the plea bargain offer would undoubtedly result in an ineffective assistance appeal point. The danger to the client, of course, is that the fact finder might be influenced by the fact that the client had sought a plea bargain. The resulting irony is that by her action the attorney invited the same charge she sought to avoid.

Nevertheless, the self-interest conduct of Monreal's lawyer was not presumptively harmful. While the method and timing of her actions may be subject to some criticism, her motive in doing what she did does not implicate *Cuyler's* "not quite *per se*" rule of prejudice. *Beets*, 65 F.3d at 1269. The lawyer's self-interest was not in direct and actual conflict with her duty to provide adequate representation to her client.

## Conclusion

We believe *Beets* has drawn a valid distinction between multiple defendant conflicts and self-interest conflicts. Accordingly, we hold that claims of ineffective assistance of counsel based upon a conflict of interest between the attorney's self-interest and his client's interests are controlled by the standards announced in *Strickland v. Washington.*

The first time this case came before us, we applied the *Strickland* test in determining that Monreal did not receive ineffective assistance of counsel.[1] Now, having analyzed the conflict of interest involved in this case with respect to the *Cuyler* standards, we affirm our previous holding. The conviction is affirmed.

HARDBERGER, Justice, dissenting.

I respectfully dissent. It is my belief that the defense lawyer's efforts to protect herself

against her client caused a conflict between her and her client. This protective effort led to inadmissible and objectionable material coming before the trial court, who was also sitting as a fact finder. Because this attorney-created conflict of interest adversely affected the lawyer's performance, I would reverse and remand.

I am aware that it is not uncommon for convicted defendants to suddenly discover that they have been denied effective assistance of counsel, regardless of how effective the counsel's performance may have been. For hard-working counsel this is no doubt vexing, or even worrisome. But a defense counsel has one overriding responsibility: to provide the most effective assistance to her or his client that they are capable of giving. This is true even if the counsel knows or is suspicious that the client, if convicted, will raise the cry of "ineffective assistance of counsel." Appellate courts have the ability to sort through these claims and routinely do so. But the potential conflict that may be raised after the verdict does not sanction the use of "protective measures" that damage the defendant's chances to win his case, or increase the chance of a harsher sentence.

## Discussion

I fail to see a significant difference in a conflict caused by representing two defendants and a conflict caused by the attorney putting her interests before that of her client. The language in *Cuyler* is not restricted to conflicts of interest involving representation of multiple defendants. The court's holding embraces conflicts of interest in general. *See Cuyler*, 446 U.S. at 349–350, 100 S.Ct. at 1718–19 ("a defendant must establish an actual conflict of interest"). The phrase "conflict of interest" should not be limited to only those conflicts involving joint representation of multiple defendants. A conflict is a conflict.

The next inquiry is whether Monreal established an actual conflict of interest. *Cuyler*, 446 U.S. at 350, 100 S.Ct. at 1719.

---

1. We attach a copy of our previous unpublished opinion and adopt its holding as part of the judgment herein.

Monreal's attorney made clear that she was "protecting herself" when she had Monreal testify before the trier of fact concerning the facts and circumstances surrounding the rejected plea bargain agreement. At this point in the proceedings the State had rested and it was the start of the defendant's case. Instead of offering evidence of her client's innocence, the first thing counsel did was to offer evidence to protect herself from a possible claim by her client that she had not communicated an offer from the State. Counsel was impermissibly putting her own interests ahead of her client's interests to his detriment. That is by definition a conflict of interests.

Finally, we must determine if counsel's performance was "adversely affected" by the conflict of interests. Counsel's performance seems deficient in a number of respects. First, Texas prohibits the admission of evidence surrounding plea discussions. *See* TEX.R.CRIM.EVID. 408 and 410; *Childs v. State*, 837 S.W.2d 822, 824 (Tex.App.—San Antonio 1992, pet. ref'd); *Moss v. State*, 860 S.W.2d 194, 196–97 (Tex.App.—Texarkana 1993, no pet.). The public policy supporting this rule of evidence is that plea bargains are essential to the efficient administration of our criminal justice system and should be encouraged. *See Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *Richardson v. State*, 667 S.W.2d 268, 269 (Tex.App.—Texarkana 1984, pet. ref'd). Parties would be less likely to enter into plea bargain negotiations if they knew that their statements and thought processes would be admissible into evidence if the plea negotiations failed. *Richardson*, 667 S.W.2d at 269–70. The testimony would clearly have been objectionable if elicited by the State. The fact that Monreal's counsel elicited it in order to protect herself makes it no less objectionable. This information was prejudicial to her client, and there was no one to object to it. It seems clear that but for the conflict of interests counsel would not have elicited from Monreal testimony concerning the plea bargain negotiations.

Second, Monreal's counsel elicited testimony which was protected by the attorney-client privilege. *See* TEX.R.CRIM.EVID. 503.

Although the client has the right to waive this privilege, that waiver should be done knowingly and intelligently. Here, there is no indication that Monreal voluntarily waived the attorney-client privilege. His own attorney was asking him questions, in the presence of the trial court, which invaded the privilege. Monreal was, in essence, forced to waive the attorney-client privilege so that counsel could "protect herself." Again, it seems unlikely that counsel would have elicited attorney-client privileged testimony had she not been motivated by a conflict of interest.

Finally, there is a question concerning self-incrimination. *See* U.S. CONST.AMEND. V; TEX.CONST. art. I, § 10. Reasonable minds can differ as to what conclusion is to be drawn from Monreal's first considering a plea of guilty, then rejecting it. This court earlier held, and the majority of the Court of Criminal Appeals agreed that the testimony, taken as a whole, was not incriminating. After all, in the end, he did reject the plea of guilty and elected to run the risk of long-term incarceration. A risk that he lost at that. Some fact finders though could conclude that an innocent person accused of a repugnant and perverse crime such as child sexual abuse wouldn't consider pleading guilty for any reason.

This murky tea-reading, seeking to penetrate the mind of a criminal defendant engaged in plea negotiations, is repugnant whatever conclusion is drawn. Both the state and the defendant have the right, if not the duty, to explore settlement possibilities without exposing themselves to meandering speculations about their motives. That's why inchoate settlement negotiations are not admissible in a trial on the merits. Monreal should never have been put in this position. Certainly, he should never have been put there by his own counsel. At this point counsel's motivation was self-protection, not advocacy on behalf of the client. It is my conclusion that counsel's performance was adversely affected by a conflicting interest. *See Cuyler*, 446 U.S. at 350, 100 S.Ct. at 1719.

The State argues that Monreal has failed to meet the *Cuyler* test because he has only

established a potential conflict and not an actual conflict. The State also argues that Monreal has not shown that there was any harm because the trial court, in its capacity as administrator of the proceedings, is entitled to know the status of plea negotiations. However, the State ignores the fact that Monreal's counsel did more than merely inform the trial judge that he had rejected a plea bargain. Instead, counsel had Monreal testify about the facts and circumstances surrounding the plea bargain, the terms offered by the State, and the fact that he had asked his attorney to secure a plea bargain agreement for him.

I would hold that trial counsel's actions in calling Monreal during the trial and asking him to reveal, before the trier of fact, that he had sought a plea bargain and that a plea bargain had been offered in order that counsel might "protect herself" constitutes ineffective assistance of counsel.

## APPENDIX

### OPINION

Opinion by: Orlando Garcia, Justice

Sitting: Shirley W. Butts, Justice
David Peeples, Justice
Orlando Garcia, Justice

Delivered and Filed: March 9, 1994

AFFIRMED

Appellant, Albert Monreal, was indicted for the offense of aggravated sexual assault and indecency with a child. After waiving a jury trial, appellant was found guilty of the offense charged in the indictment, and punishment was assessed as imprisonment for ninety-nine years. Appealing his conviction, appellant raises seven points of error contending ineffective assistance of counsel, factually and legally insufficient evidence, and forced self-incrimination. We affirm the judgment of the trial court.

### FACTS

In September of 1990, the complainant, an eleven year old girl, was under the care of appellant. Complainant's mother was in the hospital due to illness, and the appellant, mother's live-in boyfriend, was left in care of her three children. The night before the mother came home from the hospital, the complainant slept in her bedroom on one bed and the other two children slept on another bed. Appellant entered complainant's room in the nude and sat down beside complainant and started touching her. Complainant was wearing a t-shirt, shorts, and underwear. Appellant touched complainant underneath her panties with his fingers. Complainant testified that "he tried to get into my burrito [private part] and then I started wiggling around." Complainant said appellant hurt her. After appellant stopped, he left the room, and complainant ran to the restroom where she continued to feel a hurting sensation. She remained awake the rest of the night because she was afraid appellant would return to her room.

Later, in a letter to her mother, complainant told her mother of the assault. Complainant, however, kept the letter in a drawer for about four months instead of giving it immediately to her mother. Her brother found the letter and in January showed it to the mother. The mother testified that she confronted appellant, and he denied the accusation. It was not until March 1991 when complainant's mother finally reported the incident to the authorities. The series of events which lead to the mother's report began at a birthday party the mother was giving for complainant. Appellant began arguing with his adult sister who also attended the birthday party. The argument escalated into appellant hitting his sister twice during the day and finally throwing a "bicycle or some object" at her. Someone called the police who arrested appellant. The mother reported the molestation the next day, March 10, 1991, while appellant was still incarcerated. Subsequently, the mother attempted to get the charges for molestation dismissed. The mother said she did so because she believed appellant was innocent and because she loved him. However, during testimony she said she did now believe her daughter.

Prior to changing her mind and believing her daughter, the mother wrote two letters as if they were from her daughter the complainant to the appellant. The letters stated that complainant was sorry for accusing ap-

pellant and the letters indicated that appellant had not molested complainant. The mother made the complainant, against her will, copy the letters in her own handwriting, and then the mother mailed them to complainant in the Bexar County Jail. Complainant's mother also required complainant to accompany her to visit appellant in jail. Both the mother and complainant testified that the letter writing was forced and that the retraction of the accusation was false.

Appellant raises seven points of error. In points of error one, five, and six appellant contends he was denied effective assistance of counsel. He contends ineffective assistance of counsel based on counsel's conflict of interest, violation of his United States constitutional rights, and violation of his Texas constitutional rights, respectively.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his first point of error appellant addresses his counsel's conflict of interest. Appellant alleges his counsel waived appellant's right to a jury trial to "save time." Moreover, he asserts his counsel prejudiced appellant's case by going on the record, after the State rested, explaining that appellant had previously rejected a plea bargain. To protect herself, appellant's counsel asked the trial judge whether appellant should affirm the rejection of the plea bargain on the record as well. The trial judge said all three persons, the prosecutor, appellant's attorney, and appellant should go on record regarding the plea bargain. Claiming a violation of Rule 410 of the Texas Rules of Criminal Evidence, appellant contends his defense was compromised when the trier of fact learned he considered pleading guilty, was scared, and had a misunderstanding with his attorney. By protecting herself right after the State rested its case, appellant urges that his counsel conveyed a message to the trier of fact that appellant was going to be found guilty.

We first state the standard of review for ineffective assistance of counsel. The court of criminal appeals has adopted the test for ineffective assistance of counsel first enunciated by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Holland v. State,* 761 S.W.2d 307, 314 (Tex.Crim.App.1988), *cert. denied,* 489 U.S. 1091, 109 S.Ct. 1560, 103 L.Ed.2d 863 (1989). Under this two-pronged test, a convicted defendant must show that (1) his trial counsel's performance was deficient and (2) the deficient performance prejudiced the defense to such a degree that he was deprived of a fair trial. *Holland,* 761 S.W.2d at 314; *Wilkerson v. State,* 726 S.W.2d 542, 548 (Tex.Crim.App. 1986), *cert. denied,* 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987). Prejudice, in this context, is demonstrated when the defendant shows a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Holland,* 761 S.W.2d at 314, *Wilkerson,* 726 S.W.2d at 548 n. 3. Whether a defendant has received effective assistance of counsel is to be judged by the totality of the representation, not isolated acts or omissions of trial counsel. *Wilkerson,* 726 S.W.2d at 548. The *Strickland* standard applies to allegations of ineffective assistance of counsel under both the federal and state constitutions. *Hernandez v. State,* 726 S.W.2d 53, 55–56 (Tex.Crim. App.1986).

The burden of proving ineffective assistance of counsel by a preponderance of the evidence rests upon the convicted defendant. *Moore v. State,* 694 S.W.2d 528, 531 (Tex. Crim.App.1985). Moreover, "[t]he fact that another attorney might have pursued a different course of action at trial will not support a finding of ineffectiveness." *Passmore v. State,* 617 S.W.2d 682, 686 (Tex.Crim.App. 1981), *overruled on other grounds, Reed v. State,* 744 S.W.2d 112, 125 (Tex.Crim.App. 1988); *accord Walston v. State,* 697 S.W.2d 517, 519 (Tex.App.—San Antonio 1985, pet. ref'd). Further, the *Strickland* standard has never been interpreted to mean that an accused is entitled to errorless or perfect counsel. *Bridge v. State,* 726 S.W.2d 558, 571 (Tex.Crim.App.1986).

> A full inquiry into the strategy or tactics of counsel should be made only if from all appearances after trial, there is no plausible basis in strategy or tactics for his actions.

*Ex parte Burns,* 601 S.W.2d 370, 372 (Tex. Crim.App.1980). To obtain relief because of ineffective assistance of retained counsel, a defendant must also demonstrate state action by failure of a responsible state official connected with the criminal proceeding (such as the trial judge or prosecutor) to take corrective action when that official had actual or constructive knowledge of retained counsel's failure to deliver reasonably effective assistance. *Ex parte Ewing,* 570 S.W.2d 941, 945 (Tex. Crim.App.1978).

Counsel's competence is presumed and a defendant must rebut this presumption by proving that his attorney's representation was unreasonable under professional norms and that the challenged action was not sound strategy. *Kimmelman v. Morrison,* 477 U.S. 365, 384, 106 S.Ct. 2574, 2587–88, 91 L.Ed.2d 305 (1986); *Miniel v. State,* 831 S.W.2d 310, 323 (Tex.Crim.App.1992).

Although we address each point of error individually under ineffective assistance of counsel, we ultimately judge the assistance of counsel by the totality of the representation. *Wilkerson,* 726 S.W.2d at 548. We address the first prong of the *Strickland* test. Was trial counsel's performance deficient? Initially, we note that counsel has a duty to communicate plea bargain offers to the client. *Ex parte Wilson,* 724 S.W.2d 72 (Tex. Crim.App.1987). Clearly, this was done. Appellant, however, appears to object to the timing of making the record which reflected the proper communication between counsel and appellant. Because counsel admittedly forgot to go on record before trial and, instead, went on record just after the State rested, appellant asserts his counsel protected herself at the expense of her client. Thus, appellant claims his counsel conveyed a message to the trier of fact that appellant was going to be found guilty, thus she violated the Texas Rules of Evidence. TEX. R.CRIM.EVID. 410.

Rule 410 of the Texas Rule of Criminal Procedure reads as follows:

**RULE 410. INADMISSIBILITY OF PLEAS, PLEA DISCUSSIONS AND RELATED STATEMENTS**

Except as otherwise provided in this rule, evidence of the following is not admissible against the defendant who made the plea or was a participant in the plea discussions:

(1) a plea of guilty or nolo contendere which was *later withdrawn;*

(2) any statement made in the course of any proceedings under Rule 11 of the Federal Rules of Criminal Procedure or comparable state procedure regarding a plea of guilty or nolo contendere which was *later withdrawn;* or

(3) any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or a plea of nolo contendere or which resulted in a plea of guilty or a plea of nolo contendere *later withdrawn.* However, such a statement is admissible in any proceeding wherein another statement made in the course of the same plea or plea discussions has been introduced and the statement ought in fairness be considered contemporaneously with it. (emphasis added)

TEX.R.CRIM.P. 410. Appellant's testimony merely reflects that he considered a plea simply because of the unfortunate delay in his trial and because it would mean he would not have to stay in jail any longer. Appellant clearly reiterated his plea of not guilty when he testified that he rejected the plea offer limiting his incarceration to time served because he was not guilty. It hardly seems that the mere timing of entering appellant's testimony on the record constitutes ineffective assistance of counsel.

In addition, because the trier of fact was the judge and not the jury, does not mean that the trial court's role as administrator of the proceedings is abdicated. Rather, although the trier of fact, in the present case was also the administrator of the proceedings, the judge was aware of the strictly procedural necessity of officially going on the record. We find there was not a Rule 410 violation. Moreover, the waiver of a jury trial to "get to the heart of the matter fast" in light of appellant's stated desire to "come to trial as soon as possible," hardly seems more than sound strategy. *Kimmelman,* 477

U.S. at 384, 106 S.Ct. at 2587–88; *Miniel*, 831 S.W.2d at 323. Because counsel's competence is presumed and appellant has not shown that his attorney's representation was unreasonable under professional norms or was not sound strategy, we do not find appellant counsel's assistance to be ineffective. Under the first prong of the *Strickland* test, we find appellant did not show his trial counsel's performance to be deficient. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. In any event, even if the performance of appellant's counsel was deficient, appellant has not shown how his counsel's deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 693, 104 S.Ct. at 2067–68; *Holland*, 761 S.W.2d at 314. Thus, we overrule appellant's first point of error.

In points of error five and six, appellant lists five ways he was denied effective assistance of counsel. They are:

1. failure to pursue prosecutorial misconduct;
2. conflict of interest between Appellant and Appellant's trial counsel;
3. waiver of jury trial to save time;
4. no evidence presented at the punishment phase;
5. no objections made at punishment phase.

The conflict of interest and waiver of jury under numbers two and three have been discussed in the first point of error and need not be addressed again.

Under the failure to pursue prosecutorial misconduct, appellant contends the original prosecutor in the case threatened the complainant's mother with felony charges of perjury if the complainant's mother did not recant the waiver of prosecution. Appellant alleges the original prosecutor had done this misconduct in a pretrial hearing. In the closing argument of appellant's counsel, she stated that complainant's mother was threatened with perjury. However, appellant contends his counsel was ineffective because she never presented any evidence, either through witnesses or cross-examination, that the prosecutor's office had committed the misconduct. Appellant asserts that his counsel

should have had the indictment dismissed for such egregious prosecutorial misconduct. *See State v. Frye*, 846 S.W.2d 443, 448 (Tex. App.—Houston 1992, pet. granted), affirmed 897 S.W.2d 324.

As a review court, we are bound by the record, and matters not present in the record provide no basis upon which a review court may make a decision. *Powers v. State*, 727 S.W.2d 313, 316 (Tex.App.—Houston [1st Dist.] 1987, pet ref'd). Allegations of the existence of facts may not be considered. *Shepherd v. State*, 673 S.W.2d 263, 267 (Tex. App.—Houston [1st Dist.] 1984, no pet.). In the present case, the record only holds allegations by appellant's counsel that the previous prosecutor threatened complainant's mother with a felony charge for perjury. Appellant's counsel alleged the prosecutor's behavior in her closing argument, but that is all of the evidence before this appellate court. A claim of ineffective assistance of counsel, however, can only be sustained if it is firmly grounded in the record. *Johnson v. State*, 614 S.W.2d 148, 151 (Tex.Crim.App.1981); *Davis v. State*, 830 S.W.2d 762, 765 (Tex. App.—Houston [1st Dist.] 1992, pet ref'd). Thus, we cannot find that appellant's counsel was ineffective by failure to pursue prosecutorial misconduct.

We turn then to appellant's allegations number four and five, that his counsel was ineffective because she presented no evidence and made no objections at the punishment phase of his trial. However, in reviewing a complaint of ineffective assistance of counsel relating solely to the punishment phase of a trial, the two-pronged analysis of *Strickland*, 466 U.S. at 693, 104 S.Ct. at 2067–68, does not apply. *Ex parte Walker*, 777 S.W.2d 427, 431 (Tex.Crim.App.1989); *Ex parte Cruz*, 739 S.W.2d 53, 58 (Tex.Crim. App.1987). The standard to be applied in these circumstances to gauge the sufficiency of an attorney's assistance is the totality of the representation of the accused. *Ex parte Walker*, 777 S.W.2d at 431; *Ex parte Cruz*, 739 S.W.2d at 58.

[T]he test for effectiveness of counsel in the punishment phase of a non-capital offense is, first, whether counsel was reasonably likely to render effective assistance,

and second, whether counsel reasonably rendered effective assistance. *Craig v. State*, 825 S.W.2d 128, 130 (Tex. Crim.App.1992); *see also Ex parte Duffy*, 607 S.W.2d 507 (Tex.Crim.App.1980). "Counsel's failure to call witnesses at the guilt-innocence and punishment stages is irrelevant absent a showing that such witnesses were available and appellant would benefit from their testimony." *King v. State*, 649 S.W.2d 42, 44 (Tex.Crim.App.1983); *accord Wilkerson v. State*, 726 S.W.2d 542, 551 (Tex.Crim.App.1986), *cert. denied*, 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987).

In the present case, appellant merely makes the assertions that his counsel was ineffective for not objecting to the pen packets and for failing to present evidence at the punishment phase. First, appellant makes no argument as to what evidence his counsel should have presented, if that evidence was available, and if appellant would benefit from the evidence. *See King*, 649 S.W.2d at 44 (failure to call witnesses to testify on behalf of defendant); *Wilkerson*, 726 S.W.2d at 551 (no showing that potential witnesses were available). Because appellant's argument is merely an allegation, devoid of anything in the record to substantiate the claim, we may not consider it. *Powers*, 727 S.W.2d at 316. Second, appellant claims his trial counsel was ineffective because she failed to object to the pen packets at punishment. Appellant does not state how the introduction of the pen packets harmed him. Once again appellant makes an allegation, yet fails to support his allegation with anything in the record to which this review court may consider. *Powers*, 727 S.W.2d at 316.

Appellant asks this court either to reverse and remand his case for a new trial or in the alternative to abate the appeal and allow appellant to develop further evidentiary facts on this issue. Because we can only sustain a claim of ineffective assistance of counsel if it is firmly grounded in the record, we cannot reverse and remand the case on appellant's points of error five and six. Although appellant asks this court in the alternative to abate the appeal and to develop further evidentiary facts on the issue, we do not be-

cause that issue may be raised in a post-conviction writ of habeas corpus. *Ex parte Walker*, 777 S.W.2d at 429; *Bowler v. State*, 822 S.W.2d 334, 335 (Tex.App.—San Antonio 1992, pet ref'd). We overrule points of error five and six.

## LEGALLY/FACTUALLY INSUFFICIENT EVIDENCE

In points of error two and three, appellant asserts the evidence is factually insufficient to support a verdict that appellant was guilty of aggravated sexual assault and indecency with a child. In his fourth point of error, appellant avers the evidence is legally insufficient to support a conviction of aggravated sexual assault.

In reviewing the sufficiency of the evidence, a reviewing court must determine whether, considering the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Matson v. State*, 819 S.W.2d 839, 843 (Tex.Crim.App.1991). Discussing their "analysis of the sufficiency of the evidence to support the jury's finding," the Texas Court of Criminal Appeals, clarified:

> The court is never to make its own myopic determination of guilt from reading the cold record. It is not the reviewing court's duty to disregard, realign or weigh evidence. This the fact finder has already done. The factfinder, best positioned to consider all the evidence firsthand, viewing the valuable and significant demeanor and expression of the witnesses, has reached a verdict beyond a reasonable doubt. Such a verdict must stand unless it is found to be irrational or unsupported by ... the evidence, with such evidence being viewed under the *Jackson* light. Concrete application of the *Jackson* standard is made by resolving inconsistencies in the testimony in favor of the verdict.

*Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim.App.1988). This review of sufficiency of the evidence in criminal cases is considered as a matter of law question.

Applying the standard to the present case, we find that any rational trier of fact could have found all the essential elements of the offense proven beyond a reasonable doubt. The evidence included: 1) the complainant's testimony that she was sexually assaulted by appellant, 2) complainant's testimony that she temporarily recanted her story because her mother wanted her to do so, 3) the mother of complainant's testimony that she believes her daughter, 4) the testimony of the complainant's mother revealed that she recanted the story and had her daughter do the same because the mother still loved the appellant and wanted him out of jail, 5) the letter the complainant wrote and then did not give her mother for four months, 6) and the complainant's medical report. Two witnesses for appellant testified that complainant admitted to them at one point that she lied about the sexual assault. However, the factfinder was in the best position to consider all the evidence first hand and reach a verdict beyond a reasonable doubt. *Matson,* 819 S.W.2d at 846. Because the factfinder's verdict is not found to be irrational or unsupported by the evidence, the verdict will stand. *Matson,* 819 S.W.2d at 846.

Relying on two Third Court of Appeals cases, appellant claims the standard of review for the factual sufficiency of the evidence differs from the legal sufficiency of the evidence. *Orona v. State,* 836 S.W.2d 319 (Tex.App.—Austin 1992, no pet.); *Stone v. State,* 823 S.W.2d 375 (Tex.App.—Austin 1992, pet. ref'd, untimely filed). The issue of reviewing factual sufficiency of the evidence in criminal cases arises because of the adopted Texas Constitutional amendment. Tex.S.J.Res. 36, §§ 5–6, 66th Leg., R.S., 1979 Tex.Gen.Laws 3223, 3224–25 (adopted as Tex. Const. art. V, § 6) (amended 1981). The constitutional amendment provided for review of criminal cases by intermediate appellate courts. Tex. Const. art. V, § 6.

The amendment simply deleted the limiting word "civil" in section 6 which grants general appellate jurisdiction to the courts of appeals. *Compare,* Tex. Const. art. V, § 6 (1978, amended 1980) *with* Tex. Const. art. V., § 6. The unchanged portion of section 6, continues to make intermediate courts of appeals' decisions conclusive on all questions of fact. Tex. Const. art. V., § 6. The relevant portion of section 6 reads:

> ... Said Courts of Appeals shall have appellate jurisdiction co-extensive with limits of their respective district, which shall extend to all cases of which the District Courts or County Courts have original or appellate jurisdiction, under such restrictions and regulations as may be prescribed by law. Provided, that the decision of said courts shall be *conclusive on all questions of fact brought before them on appeal or error.* ...

Tex. Const. art. V., § 6.

While there have been factual sufficiency standards applied by intermediate appellate courts, those have typically been cases in which the appellant had the burden of proof. *See Mukes v. State,* 828 S.W.2d 571, 573–74 (Tex.App.—Houston [14th Dist.] 1992, no pet.); *Jones v. State,* 817 S.W.2d 854, 855–56 (Tex.App.—Houston [1st Dist.] 1991, no pet.). The appellant with that burden of proof, had to prove his defense at trial by a preponderance of the evidence. *Meraz v. State,* 785 S.W.2d 146, 154–55 (Tex.Crim.App.1990); *Olivier v. State,* 850 S.W.2d 742, 744 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd).

On legal sufficiency issues this court has abided by the statements made by the Texas Court of Criminal Appeals.

> [A] reviewing court, '... faced with a record of historical facts that supports conflicting inferences' must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution.

*Farris v. State,* 819 S.W.2d 490, 495 (Tex. Crim.App.1990).

In any event, assuming we are compelled to consider and weigh all the evidence to determine factual sufficiency,[1] we are unable

---

1. Cases approving of courts of appeals' factual sufficiency inquiries in criminal cases: *Williams v. State,* 848 S.W.2d 915 (Tex.App.—Texarkana 1993, no pet.); *Stone v. State,* 823 S.W.2d 375 (Tex.App.—Austin 1992, pet. ref'd, untimely filed).

to conclude that the judgment of trial court, in this case, is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. We overrule appellant's points of error two, three, and four.

## SELF–INCRIMINATION

Appellant contends in his seventh and final point of error that he was compelled to testify and give evidence against himself in violation of United States and Texas constitutional provisions against self-incrimination. Initially, we note that appellant fails to show how these statements incriminated him. Appellant clearly testified that he did not accept the plea bargain because he was not guilty. The second prong of the *Strickland* test has not been met. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. That is, appellant has not shown how he has been prejudiced or that he was deprived of a fair trial. *Strickland,* 466 U.S. at 693, 104 S.Ct. at 2067–68; *Holland,* 761 S.W.2d at 314.

However, in addressing the first prong, we find that appellant's trial counsel was not deficient in her performance. As discussed earlier, counsel simply made a record of appellant's denial of the plea bargain offered to him. Although an earlier request by appellant's counsel to make a record of the plea bargain offer and denial would have avoided the issue on appeal, counsel was not deficient in making the record. Appellant had the opportunity to reiterate his claim that he was not guilty. That is hardly an argument for self-incrimination. We find trial counsel's performance was not deficient, and we overrule appellant's seventh and final point of error.

Having overruled all seven of appellant's points of error, we affirm the judgment of the trial court.

Cases disapproving courts of appeals' factual sufficiency inquiries in criminal cases: *Pender v. State,* 850 S.W.2d 201 (Tex.App.—Fort Worth 1993, no pet.); *Moody v. State,* 830 S.W.2d 698 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd); *Mukes v. State,* 828 S.W.2d 571 (Tex.App.—Houston [14th Dist.] 1992, no pet.); *Brown v. State,* 804 S.W.2d 566 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd); *Arvay v. State,* 646 S.W.2d 320 (Tex.App.—Dallas 1983, pet. ref'd).