**Ramiro FLORES, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–01–00819–CR.**

Court of Appeals of Texas,
San Antonio.

Sept. 25, 2002.

Opinion by: CATHERINE STONE, Justice.

In this appeal we are asked to establish a bright line test declaring an actual conflict of interest and presumed harm any time a defendant's counsel is called as a witness by the State during the defendant's trial. Although we do not condone the practice of a prosecutor calling defense counsel as a witness during trial, we decline the invitation to fashion a per se rule.

## BACKGROUND

A jury convicted Ramiro Flores, Jr. of aggravated assault and sentenced him to 15 years imprisonment. Flores was accused of stabbing Miguel Montalvo Neri ("the victim") during an altercation in the bathroom of a nightclub. Flores was indicted for aggravated assault, and the case was tried to a jury. During the course of the trial, the State called defense counsel as a witness, contending defense counsel "left a false impression with the jury" following his cross-examination of the victim. The alleged "false impression" concerned the victim's ability to identify Flores and the meaning of a Spanish phrase on the victim's shirt the night of the attack. The trial court allowed the prosecutor to call defense counsel over counsel's objection. Flores was convicted of the crime and sentenced to fifteen years imprisonment. We affirm the trial court's judgment.

## DISCUSSION

On appeal Flores contends that because the State called defense counsel to the stand as a witness, he was denied a fair trial and denied effective assistance of counsel. In addition, Flores claims the trial court erred by omitting an instruction on the burden of proof for extraneous offense evidence admitted during the punishment phase of the trial.

M. Patrick Maguire, Kerrville, for appellant.

E. Bruce Curry, District Attorney, Kerrville, for appellee.

Sitting: CATHERINE STONE, Justice, PAUL W. GREEN, Justice, SARAH B. DUNCAN, Justice.

## A. Defense Counsel as a Witness

 During the cross-examination of the victim, defense counsel asked:

Q: I want to direct your memory, please, back to when you testified before. Do you remember that the [prosecutor] asked you to identify Ramiro Flores?

A: Yes.

Q: And isn't it true that you asked the interpreter which one is Ramiro?

Prosecutor: Your Honor, may I request that counsel tell me from where he's reading?

THE COURT: Yes, that will be fine.

Defense: That would not have been in the transcript, your honor. It would have been in Spanish.

THE COURT: All right.

Witness: I don't remember if that's what I answered, but maybe, because of the names. I don't know the names, and I didn't know who he was, but I could recognize who he was.

During redirect examination, the State attempted to clarify the victim's earlier testimony by establishing that at the pretrial hearing the victim did identify Flores as the person who stabbed him.

Defense counsel then conducted recross-examination:

Q: As I understand what you have told us a little while ago, Mr. Montalvo Neri, you don't remember if you had to ask the man who was interpreting which one is Ramiro?

A: Well, yes, I didn't know them by name. I had seen them, but I didn't know them by name, but I could recognize his face.

Q: So you are now saying that you did ask the man who was translating which one is Ramiro?

A: No, I never said that I asked him. I say that in case that I had asked, if I had asked, I don't remember.

The trial court then called a recess, and after the recess, the State sought to call defense counsel to the stand.

Prosecutor: Judge Ables, before we bring the jury in?

THE COURT: Yes.

Prosecutor: I had told [defense counsel] that I intend to call him as a witness to testify that he does not recall the witness, Miguel Montalvo, asking the interpreter which one is Ramiro, and I think he's left a false impression with the jury and he's the only one I can call to testify to that effect, because I can't argue that that's not, in fact— you know, there's no evidence that that actually happened.

Defense counsel objected, arguing it was improper to call a defense counsel to testify. Over defense counsel's objection, the trial court permitted the State to call him to the stand. The following interchange then occurred:

Q: (Prosecutor) Mr. Pickell, you were present at the hearing in front of the Court that took place on November 16th of 2000, is that correct?

A: (Defense Counsel) Yes, I was.

Q: And that was a hearing involving this case; is that right?

A: That's correct.

Q: Okay, and isn't it true that you do not recall Miguel Montalvo asking the interpreter "Which one is Ramiro?"

A: I cannot say that I remember hearing that being asked.

* * *

Q: And isn't it true that the confusion over the interpretation was actually over the interpretation of what Miguel Montalvo's shirt said?

A: There was confusion over what the meaning of what was written on Mr. Montalvo's shirt, yes.

Q: Okay, and you did not necessarily agree with what the interpreter at the hearing—that interpreter's interpretation; is that right?

A: At the hearing I did not agree with that interpretation.

Q: Okay, and you would agree with me that in different parts of Mexico there are different interpretations for the same words? Would you agree with that?

A: I would agree with that.

Q: Okay, and you have read a copy of the transcript from the November 16th hearing; is that correct?

A: Yes. I have.

Q: And nowhere in that transcript did you see where you objected and brought to the Court's attention that you were disagreeing with anything the interpreter was saying, that it was being interpreted incorrectly; is that right?

A: I don't believe so.

Prosecutor: Okay. Nothing further, Your Honor.

THE COURT: Did you want to add anything to your testimony, Mr. Pickell?

Defense Counsel: I would. I would have to say that during the prior hearing, I wasn't concentrating completely on the Spanish statements of Mr. Montalvo Neri. I was also concentrating on other matters related to the hearing, and the fact that I don't recall Mr. Montalvo Neri asking the interpreter that question does not mean he didn't ask it.

Q: (Prosecutor) Okay, but, of course, since you don't recall does not mean that it did. Would you agree with that.

A: I have to agree with that.

On appeal, Flores argues he was denied a fair trial because the trial court permitted the State to call defense counsel as a witness during the proceeding. Specifically, Flores claims that when defense counsel was called to the stand, counsel's credibility as an advocate was adversely affected. To support his argument, Flores relies upon the disciplinary rules of conduct[1] and *Ford v. State*, 166 Tex.Crim. 347, 314 S.W.2d 101 (1958).

*Ford v. State* is a brief opinion from the Court of Criminal Appeals. In *Ford*, the State was permitted to question defense counsel during a DWI trial. *Ford*, 314 S.W.2d at 102. On appeal, the defendant argued the prosecutor's examination of defense counsel was calculated to leave an impression that counsel was guilty of some trick or device in his selection of the jury. *Id.* The court held the record did not support the prosecutor's accusations and that the trial court erred in allowing the State to ask such questions. *Id.* The court emphasized that "[l]awsuits should be tried upon the issues raised and submitted to the jury and not upon collateral issues such as personal conflicts between counsel." *Id.* Accordingly, the court reversed the conviction and remanded the cause for a new trial. *Id.*

Only one other case relies on the *Ford* decision. *See Hawkins v. State*, 613 S.W.2d 720 (Tex.Crim.App.1981). In *Hawkins*, the defendant went to trial *pro se*. *Id.* at 724. At trial, the defendant objected to the testimony from one of the State's witnesses, and the State responded

1. Flores cites Rule 3.08 of the Texas Rules of Disciplinary Procedure, i.e., "the Lawyer—Witness Rule." Rule 3.08 generally prohibits a lawyer from representing a client if the lawyer will be a witness. TEX. DISCIPLINARY R. PROF. CONDUCT 3.08 (1994).

by soliciting disparaging remarks from the witness regarding the defendant's "ego." *Id.* at 724. The court held that where competency to stand trial is not an issue and the accused is exercising his right to conduct his own defense, it is constitutional error for the prosecutor or a witness to comment adversely on the mental attitude of the accused. *Id.* at 729. The court conducted a harmless error analysis and determined that the "ego" remarks were harmless in light of the great weight of the evidence in the case. *Id.* at 730.

Although Flores contends *Ford* is directly on point, we believe Flores's reliance on *Ford* is misplaced. Unlike *Ford,* the prosecutor in this case called defense counsel to elicit testimony material to the merits of the case. The prosecutor claimed defense counsel was the only witness available to testify about whether the victim asked the interpreter "which one is [Flores]?" The record is devoid of any evidence rebutting this contention.[2] We note that the *Ford* court did not preclude the State from questioning defense counsel on matters material to the merits of the case. Rather, the court simply stated that "[l]awsuits should be tried upon the issues raised and submitted to the jury and not upon collateral issues." Thus, *Ford* appears to be a very limited holding, only forbidding prosecutors from engaging in conduct that distracts the fact finder from resolving the issues before it.

In this case, the error, if any, resulting from the prosecutor's examination of defense counsel was harmless. Defense counsel's testimony was not adverse to Flores. Counsel testified that he did not hear the victim ask the interpreter "which one is [Flores]," and that just because he could not "recall [the victim] asking the interpreter the question does not mean [the victim] didn't ask it." Such testimony

neither strengthened the State's case nor weakened Flores's case. More importantly, the prosecutor's questions did not undermine counsel's credibility as an advocate. The jury had before it testimony from both the victim and a security guard identifying Flores as the individual who stabbed the victim. In light of the overwhelming weight of the evidence before the jury, it is unlikely that the minds of the average juror would have found the State's case less persuasive had the State never called defense counsel to testify. The mere fact defense counsel was called to testify, without more, does not demonstrate that Flores was denied a fair trial. We overrule Flores's first issue.

## B. Ineffective Assistance of Counsel

In his second issue, Flores contends he was denied effective assistance of counsel because defense counsel was burdened by a conflict of interest during trial-testify for the State or risk being held in contempt. The Sixth Amendment to the United States Constitution guarantees the right to reasonably effective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Monreal v. State,* 947 S.W.2d 559, 564 (Tex.Crim.App.1997). The Sixth Amendment also guarantees the right to "conflict-free" representation. *Ex parte McCormick,* 645 S.W.2d 801, 802 (Tex.Crim.App. 1983). Most claims alleging ineffective assistance of counsel fall within the *Strickland* standard. *See Strickland,* 466 U.S. at 668, 104 S.Ct. 2052. To prove ineffective assistance of counsel under this standard, the defendant must demonstrate: (1) counsel's representation or advice fell below objective standards of reasonableness; and (2) the result of the proceeding would have been different but for trial counsel's

---

**2.** The interpreter's availability to testify was never explored at trial.

deficient performance. *Id.* at 688–92, 104 S.Ct. 2052. The defendant bears the burden of proving his claims by a preponderance of the evidence. *Jackson v. State,* 973 S.W.2d 954, 956 (Tex.Crim.App.1998).

 Flores argues that because his ineffective assistance claim is premised on a "conflict of interest," it should be governed by the case of *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).[3] Under *Cuyler,* a defendant demonstrates a violation of his right to reasonably effective assistance based on a conflict of interest when: (1) counsel was burdened by an *actual conflict of interest;* and (2) the conflict had an adverse effect on specific instances of counsel's performance. *Cuyler,* 446 U.S. at 348–50, 100 S.Ct. 1708. Until a defendant shows his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance under *Cuyler.* *Id.* at 350, 100 S.Ct. 1708. "An actual conflict of interest exists if counsel is required to make a choice between advancing his client's interest in a fair trial or advancing other interests (perhaps his own) to the detriment of his client's interest." *Monreal v. State,* 923 S.W.2d 61,64 (Tex.App.-San Antonio 1996), *aff'd,* 947 S.W.2d 559 (Tex. Crim.App.1997). If the proof demonstrates no more than the "possibility of a conflict of interest" or a "speculative" conflict, the *Strickland* standard applies. *See Cuyler,* 446 U.S. at 350, 100 S.Ct. 1708; *James v. State,* 763 S.W.2d 776, 778–79 (Tex.Crim.App.1989). If, however, the defendant is able to demonstrate an actual conflict, prejudice is presumed and, generally, the conviction is reversed and the cause remanded for a new trial. *Cuyler,* 446 U.S. at 350, 100 S.Ct. 1708.

The main difference between the *Cuyler* and *Strickland* standards is the differing burdens placed on the complaining defendant. *Monreal v. State,* 923 S.W.2d at 64. Under *Strickland,* the defendant must prove the attorney's performance was defective and that the performance prejudiced his case—that the error was "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *See Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. By contrast, under *Cuyler* the defendant must prove there was an actual conflict of interest and that his case was "adversely affected" by the conflict. *See Cuyler,* 446 U.S. at 349–50, 100 S.Ct. 1708.

In *Monreal v. State,* we followed the Fifth Circuit's opinion in *Beets v. State,* 65 F.3d 1258, 1271 (5th Cir.1995) and declined to expand *Cuyler* to attorney self-interest conflicts. In *Monreal,* the defendant waived a jury trial, and the case was tried to the bench. *Monreal,* 923 S.W.2d at 62. After the State rested, defense counsel, to protect herself from an ineffective assistance challenge, elicited otherwise inadmissible testimony from the defendant. *Id.* We determined that defense counsel's conduct was not presumptively harmful and held counsel's self-interest in protecting herself was not in direct and actual conflict

---

**3.** In *Cuyler,* two attorneys represented appellant and his two co-defendants. *Id.* at 337, 100 S.Ct. 1708. The appellant was the first to go to trial and made no objection to the multiple representation. *Id.* The evidence against the appellant was entirely circumstantial, yet his attorneys chose not to present any evidence in support of his case. *Id.* at 338, 100 S.Ct. 1708. A jury found him guilty and sentenced him to life imprisonment. *Id.* The appellant's co-defendants were later acquitted. *Id.* On appeal the appellant claimed he was denied effective assistance of counsel. *Id.* 338–41, 100 S.Ct. 1708. The Supreme Court agreed and reversed his conviction because there was testimony that the appellant's attorneys failed to present evidence on his behalf to ensure that they did not prejudice the cases of their two other clients. *Id.* at 350, 100 S.Ct. 1708.

with her duty to provide adequate representation to her client. *Id.* at 66.

We stated:

When a lawyer undertakes to simultaneously represent multiple criminal defendants, the risks of prejudice to one client or the other are so great that the law imposes an automatic presumption of prejudice. It is hard to imagine a circumstance where a lawyer can properly represent the interests of two or more clients in the same criminal proceeding. The duty of loyalty to any single client is so strong that it is in direct and actual conflict with the notion of representing another client in the same matter. The effect of this conflict is best exhibited in the blame-shifting defense—the other guy did it. If a lawyer represents two or more defendants in the same matter, he is legally and ethically deprived of the time-honored defense of blaming the other defendant. Under those circumstances, the automatic presumption of prejudice is quite valid.

But where the conflict is one of self-interest, the conflict does not necessarily result in harm to the client. Insofar as the protections to the client are concerned, it does not follow that a client will be denied a fair trial simply because his lawyer has a self-interest at stake. Granted, in looking out for himself, a lawyer may do or fail to do something that causes damage to his client's case. But this is not always true. A lawyer's personal interest conduct may very well have no effect on whether or not his client receives a fair trial. The "consequences [of self-interest conflicts] on the quality of representation range from wholly benign to devastating."

No presumption of prejudice arises out of the self-interest conflict—to establish ineffective assistance of counsel, the client must prove prejudice. The client must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."

*Id.* at 65 (citations omitted).

The Court of Criminal Appeals affirmed our decision. *See Monreal,* 947 S.W.2d at 565. The court recognized that defense counsel could have protected herself from a future claim of ineffective assistance without harming her client. *Id.* at 564.

To protect herself from a future claim of ineffective assistance, all appellant's trial counsel needed to do was to put into the record the fact that she had informed appellant of the plea bargain offer and that he had rejected it. We know of no reason why the presentation of such information, even before the trier of fact, would have harmed appellant in any way or would have conflicted with his interest in a fair trial. Certainly such evidence would have not have been objectionable under [the rules of evidence], even if such evidence had been offered against appellant.

*Id.* The court also stated that defense counsel was not required to make a choice between advancing her client's interest in a fair trial or advancing her own interest in avoiding a future claim of ineffective assistance. *Id.* at 565. Thus, her personal interest did not actually conflict with her client's interest. *Id.* "The fact that she was less than artful in executing her personal interest—by eliciting unnecessary, and potentially damaging, information before the trier of fact—did not create an actual conflict of interest where none otherwise existed." *Id.* The court held we did not err in holding that the defendant failed to demonstrate the existence of an actual conflict of interest. *Id.* The court, however, reserved ruling on whether *Strickland* is the appropriate standard for conflicts

between an attorney's self-interest and his client's interest. *Id.*

■ In the case at bar, defense counsel was faced with a self-interest conflict—testifying for the State or risking contempt charges for refusing to testify. We follow *Monreal* and apply the *Strickland* standard. *See Monreal*, 923 S.W.2d at 66. From the record it appears that defense counsel's testimony had no effect on whether Flores received a fair trial. Counsel's testimony was neither adverse to Flores nor affected his credibility as an advocate. Because Flores was not prejudiced by counsel's testimony, his second issue is overruled.

## C. Jury Instruction on Burden of Proof for Extraneous Offenses

In his third issue, Flores complains the trial court erred in failing to include a jury instruction on the burden of proof regarding his prior felony convictions admitted at the punishment phase of the trial.[4] Flores asserts he suffered egregious harm as a result of this trial court error. We disagree.

■ The State may offer evidence of extraneous offenses during the punishment phase of the trial. TEX.CODE CRIM. PROC. ANN. art. 37.07 § 3(a)(1) (Vernon Supp. 2002). The trial court must charge the jury that it can only consider such evidence if it finds beyond a reasonable doubt that the defendant committed the offenses. *Huizar v. State*, 12 S.W.3d 479, 483–84 (Tex.Crim.App.2000). The court must give a reasonable doubt instruction even if it is not requested. *Id.*

■ When a defendant complains of a charge error on appeal, we must first determine whether there is any error in the jury charge. *Hutch v. State*, 922 S.W.2d 166, 170 (Tex.Crim.App.1996). If we conclude there is error, we must determine if the error caused sufficient harm to warrant reversal. *Id.* at 170–71. The extent of harm requiring reversal is controlled by whether the error was properly preserved at trial. *Id.* at 171. Where the defendant failed to object to the error at trial, we reverse only if the record shows that the error was so egregiously harmful that the defendant was denied a fair and impartial trial. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984). Egregious harm includes errors: (1) affecting the case's foundation; (2) denying the defendant a valuable right; (3) significantly affecting a defensive theory; or (4) making the case for guilt or punishment clearly and substantially more compelling. *Hutch*, 922 S.W.2d at 171, *Saunders v. State*, 817 S.W.2d 688, 692 (Tex.Crim.App. 1991). In determining the degree of harm, we look to the entire jury charge, the state of the evidence, the arguments of counsel, and any other relevant information from the entire record. *Id.*

In this case, the trial court failed to include a reasonable doubt instruction for Flores's extraneous offenses. Flores, however, did not object to the jury charge at trial. Therefore, to obtain reversal, Flores must demonstrate egregious harm.

■ After reviewing the entire record, we cannot say Flores suffered egregious harm. First, Flores does not contend on appeal that if a proper instruction had been given, the evidence was insufficient to prove beyond a reasonable doubt that he committed the extraneous offenses. Second, the jury could have assessed Flores's punishment based solely on the facts of the

4. Flores was previously convicted of failure to stop and render aid and driving while intoxicated.

instant offense. The record contains substantial evidence indicating Flores's guilt. Not only did the victim identify Flores as his assailant, but a security guard from the nightclub identified Flores as well. The record also reveals that Flores's assault was heinous. The victim was stabbed in the face and chest and needed "cardiac massage and resuscitation." Third, Flores was not harmed by the omission of the instruction because during closing argument defense counsel acknowledged that Flores was previously convicted of the extraneous offenses. Lastly, Flores' sentence of 15 years is within the range of punishment for aggravated assault. In light of the record as a whole, we conclude that Flores did not suffer egregious harm and overrule his third issue.

CONCLUSION

Finding no reversible error, we overrule each of Flores's complaints. We reiterate that "false impressions" left by defense counsel's questioning of witnesses is best addressed by skillful re-direct or recross examination by the State, not by calling defense counsel as a witness. Under the facts of this case, however, no harmful error is presented. Accordingly, we affirm the trial court's judgment.