**Ex parte Bobby F. McCORMICK and Billy J. McMahon.**

No. 69038.

Court of Criminal Appeals of Texas, En Banc.

Feb. 16, 1983.

Lynn S. Patton, Longview, Jay Topkis, Marc Fleisher and Eric M. Freedman, New York City, for McCormick.

Ebb B. Mobley, Longview, Frederick T. Davis, Frederick J. Baumann and Raymond E. Willis, New York City, for McMahon.

Robert Huttash, State's Atty., and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION

CLINTON, Judge.

"This Constitution ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

Article VI, paragraph 2, Constitution of the United States.[1] Today the Court determines whether there has been violated the right of a criminally accused to "conflict-free" representation that the Supreme Court of the United States has insisted is inherent in "the 'Assistance of Counsel for his defense' guaranteed by the Sixth Amendment" to the Constitution of the United States. *Glasser v. United States,* 315 U.S. 60, 70, 62 S.Ct. 457, 464, 86 L.Ed. 680 (1942).[2] First, however, we provide the setting for this habeas corpus proceeding.

In a joint trial each applicant was convicted for the offense of capital murder and the death penalty was assessed. On appeal all grounds of error were overruled by the Court in *McMahon and McCormick v. State,* 582 S.W.2d 786 (Tex.Cr.App.1978) and motion for leave to file motion for rehearing was denied January 10, 1979.[3] Certiorari was denied by the Supreme Court October 5, 1979, *sub nom. McCormick et al v. Texas,* 444 U.S. 919, 100 S.Ct. 238, 62 L.Ed.2d 175 and it denied rehearing December 3, 1979, 444 U.S. 985, 100 S.Ct. 492, 62 L.Ed.2d 414. Thereafter, on April 3, 1980 the trial court sentenced applicants and set June 2, 1980, for the date of their execution.

May 15, 1980, represented by fresh counsel, respectively, each applicant filed in the convicting court his petition for writ of habeas corpus, pursuant to Article 11.07, V.A.C.C.P. Promptly finding that "the petition contains no previously unresolved facts material to the legality of Applicant's confinement," the judge then presiding ordered it "overruled." The petition and its related papers were received by the Clerk of this Court May 20, 1980, and upon consideration and deliberation we entered an order dated May 22, 1980, staying execution pending final disposition of each proceeding and remanding the petitions to the convicting court for an evidentiary hearing. In pertinent part, our order noted four contentions, including deprivation of effective assistance of counsel who represented both applicants, and directed the convicting court to hold an evidentiary hearing regarding the allegations.[4]

Conformably with the Order the convicting court held an evidentiary hearing Octo-

---

1. As excerpted from 3 Vernon's Texas Constitution (1955) 700 at 710.

2. Progeny of *Glasser v. United States,* supra, include *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978); *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); and *Wood v. Georgia,* 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981).

3. Having just joined the Court ten days earlier the writer did not participate in deciding the cause.

4. That portion of the order read as follows:
 "Both petitioners allege, *inter alia,* that they were deprived of effective assistance of counsel by joint representation in the trial court of both petitioners by the same attorneys, that they were denied their rights to assistance of counsel, to obtain exculpatory information, and to compel witnesses in their behalf by the actions of the prosecutor in instructing witnesses not to talk to defense counsel and in coercing testimony by improper means, and that they were denied the right to a fair and impartial appellate proceeding by the participation in the consideration of their appeals of Judge Jim Vollers who in his previous capacity as State's Attorney had rendered advice and assistance to the District Attorney who tried the case.
 In addition, petitioner McCormick alleges, *inter alia,* that he was denied due process when the prosecutor broke his promise *not to* seek the death penalty in return for a polygraph statement and testimony against alleged co-conspirators.
 It is the Court's opinion that additional facts need to be developed and that the trial court is the appropriate forum. Therefore, that court shall hold an evidentiary hearing to determine the facts of the four allegations set forth above."

ber 12 and 15, 1981; then, taking the matters under advisement, requested and in due course received briefs as well as proposed findings of fact and conclusions of law. Thereafter, the habeas judge made his findings and conclusions and caused them to be filed with the clerk of the convicting court who, in turn, forwarded the same to the Clerk of this Court along with a transcription of the notes of the court reporter and a volume of exhibits admitted into evidence during the evidentiary hearing. Our Order having been complied with fully, the petitions, the submissions by counsel and the record were reviewed by the Court, and September 22, 1982, we directed that both causes be filed, docketed and set. See Article 11.07, § 3, V.A.C.C.P. They were submitted to the Court October 27, 1982, and we are now authorized to render judgment "as the law and facts may justify," *ibid.*

Based on its findings of fact the convicting court concluded, *inter alia:*

"... as a matter of law that the conflict of interest resulting from the joint representation of Applicants by Scroggins and Bryant adversely affected the attorneys' performance in cross-examination of State's witnesses, in argument, both at the guilt-innocence and punishment phases of the trial, and that both Applicants were denied effective assistance of counsel in violation of their Sixth and Fourteenth Amendment rights under the Constitution of the United States."

Accordingly, the court recommended that the convictions of applicants be vacated, and that they be remanded to local custody to answer the indictment against them.

■■■ This Court is not bound by the findings, conclusions or recommendations of the convicting court. *Ex parte Ramirez,* 577 S.W.2d 261, 263 (Tex.Cr.App.1979); *Ex parte Williams,* 561 S.W.2d 1, 2, n. 1 (Tex.

Cr.App.1978); *Ex parte Hagans,* 558 S.W.2d 457, 458 (Tex.Cr.App.1977); *Bazemore v. State,* 430 S.W.2d 205, 206 (Tex.Cr.App. 1968); *Ex parte Young,* 418 S.W.2d 824, 826, 830 (Tex.Cr.App.1967). More particularly the Court has held that it is free to reject a conclusion of the convicting court that an applicant suffered ineffective assistance of counsel. *Ex parte Reed,* 610 S.W.2d 495, 500 (Tex.Cr.App.1981) and *Ex parte Harris,* 593 S.W.2d 330, 333 (Tex.Cr. App.1979). On the other hand, when supported by the record, findings of the habeas judge should be accepted or, if not, then considered when thus supported, *Ex parte Hurd,* 613 S.W.2d 742, 743, n. 1 (Tex.Cr. App.1981); *Ex parte Turner,* 545 S.W.2d 470, 473 (Tex.Cr.App.1977).

In the matters before us the convicting court found that Lawrence R. Scroggins, an attorney with substantial experience of twenty six years, and D. Jennings Bryant, having three years of practice in criminal law matters, had been retained by applicants and their respective families to represent them in the cause that was tried and appealed to the Court. See *McMahon and McCormick,* supra, (and note that they also handled the cause on appeal). Before trial, aware of "the potential conflicts of interest in their joint representation," they never gave applicants any explanation of the nature and character of such conflict "inherent" in such joint representation, though they knew that the case against McCormick was not as strong as against McMahon and that the respective interests of their clients were "divergent."

During the course of a pretrial hearing the trial judge was presented by the State with a motion for separate trials.[5] Attorneys for applicants resisted successfully— the motion for severance was denied. The habeas court found that after denial of the motion neither attorney informed the judge of the trial court or the prosecutor of the

5. Both applicants had given a confession, which the State indicated it intended to introduce, but each statement made much mention of the other accused. Recognizing that a serious problem under *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) might arise, the State sought to solve it in advance by a severance with separate trials.

conflict of interest existing in their joint representation of applicants.[6] It also found:

> "Messrs. Scroggins and Bryant both opposed the State's motion for separate trials ... because said attorneys, aware of the conflict of interest inherent in their joint representation of Applicants, were persuaded that an actual conflict of interest would arise if separate trials were ordered requiring their withdrawal as counsel,[7] which would also require them to refund a portion of the cash fees already .paid them by Applicants' families."[8]

Their trial strategy was based on the assumption that both confessions would be offered and admitted into evidence, for the trial court had heard and denied motions to suppress, finding the confessions admissible. The idea was to show that McCormick had been induced to make his statement by a prosecutorial promise not to seek the death penalty against him, and then contend that McMahon gave his later statement only because Ranger Cook persuaded him to do so by reading to him McCormick's previously given "tainted" confession implicating McMahon.

As it turned out, however, the State offered and the court admitted only the confession of McMahon.[9] In it were statements implicating McCormick to a degree that, opting not to offer McCormick's confession, the State was otherwise unable to prove—"McMahon's confession related the events surrounding the crime in a very detailed fashion," *McMahon v. State*, supra, at 789. Yet, McCormick's right to confront McMahon as a witness was lost when his attorneys stoutly opposed the State's motion for severance and the trial court denied it—just as the Court held on appeal, see *McMahon v. State*, supra, at 793–794.[10]

Further, as to developments occasioned by the State's withholding McCormick's confession from the jury, the habeas court found:

6. In this vein it was also found that the judge of the trial court never inquired about or informed applicants concerning any conflict of interest by reason of joint representation and, further, that applicants themselves never made any objection concerning that common representation. Those findings are significant in that their consequence is that to obtain relief applicants must show an actual conflict which adversely affected the performance of their lawyers. *Cuyler v. Sullivan*, supra, 446 U.S. at 348, 100 S.Ct. at 1718.

7. Bryant acknowledged a recognition that should either accused testify at trial of the other, he would be ethically precluded from cross-examination, having become privy to information from the testifying client in his capacity as attorney. Moreover, plea negotiations before trial could hardly contemplate acceptance of immunity for one client to testify against the other.

8. Together almost twenty thousand dollars had been paid directly to counsel; they received some eight thousand dollars from another lawyer hired initially by representatives of the families. (Indeed, as counsel negotiated with McCormick's parents to represent him, he was well aware that an attorney had already been retained.) Bryant assigned as another reason for opposing severance that separate trials would be "severely detrimental to the defendants and their families because they could not have afforded at that time to hire new counsel" in that they "did not have the money to do that."

9. Though the case presented by the State against McCormick was still as weak as earlier anticipated, counsel considered but rejected the notion of then moving for a severance or for mistrial as to McCormick, because to have done so "would jeopardize McMahon's case" or, as he colloquially put it, would "gut shot him," and "we couldn't do that representing both clients."

10. "In the instant case, reference to McCormick could not be excised from the confession without the jury realizing that the excised portions referred to McCormick. Therefore, the only way to protect McCormick's rights, while allowing the State to use the confession against McMahon, would be to have separate trials. The State sought such a severance. Appellants, represented by the same counsel, opposed the severance. The trial court refused to sever the cases. * * * We hold that under these facts McCormick waived his right to confront McMahon with respect to the confession."

"13. The potential conflict of interest resulting from the joint representation in this case by Scroggins and Bryant of Applicants became an actual conflict of interest when the State of Texas rested its case in chief without introducing before the jury the written confession of petitioner McCormick.

"14. The actual conflict of interest adversely affected the performance of Scroggins and Bryant in the discharge of their duties as counsel for Applicants. An actual conflict of interest resulting from such joint representation by Messrs. Scroggins and Bryant existed when Mr. Bryant cross-examined the State's witness, Ranger Cook, when he disclosed to the jury during the course of such cross-examination the fact that McCormick had made a confession in the case."

The professed justification for his move was "to protect Mr. McMahon and give him a record on appeal." [11]

The convicting court also found that joint representation created such a conflict of interest that performance by the attorneys was adversely affected when they came to argue to the jury at both phases of the trial. Their selfimposed handicap is manifest: the more they sought to exeronate McCormick by pointing out weaknesses in the State's case, the more they damned McMahon, their other client. For instance, in this murder for hire case, counsel emphasized that the evidence failed to show McCormick received any of the substantial remuneration, leaving the jury with the notion that McMahon, who had negotiated the agreement with Tony Bohannon—*McMahon v. State*, supra, at 788—got the lion's share, if not all, of the money. Their evidence on punishment was merely an equal number of reputation witnesses for each client. During argument that followed neither applicant received the benefit of particularized treatment vis a vis the second issue underlying assessment of the death penalty. Article 37.071, § (b)(2),[12] V.A.C.C.P. On the other hand, counsel refrained from arguing supportable theories of the lesser culpability of McCormick for fear of jeopardizing McMahon.[13]

Finally, fully supported by the evidence is the finding that neither applicant waived "his right to 'conflict-free' counsel." [14]

 Not only considering but also accepting the findings of the judge of the convicting court, supported as they are by abundant evidence, we further agree with his essential conclusion of law. *Glasser v. United States, Cuyler v. Sullivan* and *Wood v. Georgia,* all supra.[15] While an accused who fails to object at trial "must demon-

11. At the habeas hearing Bryant described his dilemma, *viz:*
"I made that decision ... there was no other way but to hurt one or help the other, or help one and hurt the other, that is just where I was at."

12. Just nine pages of argument, during which counsel commonly referred to applicants as "they," as in the State has failed to prove beyond a reasonable doubt that "they" will be a continuing threat to society.

13. Bryant outlined aspects of such an argument that occurred to him at the time, "But we can't argue it without most assuredly without question getting a death penalty for Mr. McMahon ..."

14. In this connection, the convicting court also found:
"That neither applicant: (1) was aware of the conflict of interest resulting from such joint representation; (2) realized the consequences of such representation; (3) was aware of the right to obtain other counsel." Bryant did testify that prior to the severance hearing he said that separate trials might present a problem of conflicting interests requiring them to withdraw; however, he "figured that by opposing the severance we would have eliminated it."

15. Once the hearing on motion for severance had been concluded, arguably the trial court knew or should have known enough of potential conflict of interest created by joint representation, even though no objection was made, to trigger an inquiry. See *Cuyler v. Sullivan,* supra, 446 U.S. at 347, 100 S.Ct. at 1717. Thus, among other reasons for opposing severance applicants' counsel stated that it would "impose an extreme hardship upon the defendants," an apparent allusion to the fact that resources of their families had been spent for joint representation so that their prospect of

strate that an actual conflict of interest adversely affected his lawyer's performance," *Cuyler,* supra, 446 U.S. at 348, 100 S.Ct. at 1718, ever since *Glasser* where there is evidence of counsel's "struggle to serve two masters" that cannot be seriously doubted, *id.,* at 315 U.S. at 75, 62 S.Ct. at 467, it follows that an accused's defense is "impaired," *Cuyler,* supra, 446 U.S. at 349, 100 S.Ct. at 1718. Furthermore, once a conflict of interest is shown actually to have affected adequacy of representation, an accused "need not demonstrate prejudice in order to obtain relief," *ibid.* This court has adopted and applied those principles in a variety of contexts: *Ex parte Alaniz,* 583 S.W.2d 380 (Tex.Cr.App.1979);[16] *Gonzales v. State,* 605 S.W.2d 278 (Tex.Cr.App.1980) and, more recently, *Ex parte Parham,* 611 S.W.2d 103 (Tex.Cr.App.1981). They sustain our conclusion that each applicant is entitled to relief.

■ Moreover, "[s]ince a possible conflict inheres in almost every instance of multiple representation," *Cuyler,* supra, 446 U.S. at 348, 100 S.Ct. at 1718, its certainty is practically predictable in a capital case in Texas, given the approval by the Supreme Court of the United States in *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), that our procedure for imposing the death penalty "guides and focuses the jury's objective consideration of the particularized circumstances on the individual offense and the individual offender before it can impose a sentence of death," *id.,* 428 U.S. at 274, 96 S.Ct. at 2957. While we are not prepared today to join the Supreme Court of California and hold that joint representation in a capital case is *per se* unconstitutional, see *People v. Chacon,* 69 Cal.2d 765, 73 Cal.Rptr. 10, 16, 447 P.2d 106, 112 (1968), their patent conflict of interest and its flagrant disregard by counsel even when *their performance became adversely affected* and the defense of their clients manifestly impaired, will be persuasive when we come to consider such a *per se* holding. See *Holloway v. Arkansas,* supra, 435 U.S. at 489–490,[17] 98 S.Ct. at 1181, and *People v. Chacon,* supra, 73 Cal.Rptr. at 16, 447 P.2d at 112.[18]

Accordingly, the judgments and sentences in Cause No. 12,793 in the 123rd Judicial District Court of Panola County are vacated and set aside, and each applicant is remanded to the custody of the Sheriff of Panola County to answer the indictment pending against them in that cause. The Clerk of this Court is directed to send a copy of this Opinion to the Texas Department of Corrections.

It is so ordered.

---

obtaining other attorneys for a separate trial was poor. Moreover, the State's announced intention to offer both confessions, ruled admissible by the trial court, was a harbinger of possible conflict, given the case against McCormick. Nevertheless, the habeas court implicitly found that the trial judge was not made aware of any conflict, and we also defer to that finding. Compare *Cuyler v. Sullivan,* supra, 446 U.S. at 347–348, 100 S.Ct. at 1717–1718 with *Wood v. Georgia,* supra, 450 U.S. at 273, 101 S.Ct. at 1104.

16. Although Alaniz was required to show a breach of legal duty on the part of his retained counsel under the doctrine then extant, we made clear in *Ex parte Duffy,* 607 S.W.2d 507 (Tex.Cr.App.1980) that the same legal standard for testing effective assistance of counsel is to be used for every attorney, retained or appointed.

17. "Joint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing." The Supreme Court then presents examples ranging from hindering plea negotiations to tempering argument on punishment with respect to "the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of the other."

18. At the punishment stage an attorney "cannot simultaneously argue with any semblance of effectiveness that each defendant is most deserving of the lesser penalty."