Affirmed and Opinion filed June 27, 2002









Affirmed and Opinion filed June 27, 2002.

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-00-00899-CR

____________

 

DAVID MICHAEL THOMPSON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On
Appeal from the 278th District Court

Walker County, Texas

Trial
Court Cause No. 20,127-C

 



 

O P I N I O N

Appellant David Michael Thompson challenges his conviction
for possession of a deadly weapon in a penal institution.  See Tex.
Pen. Code Ann. ' 46.10.  In three related points, he claims that his
trial counsel=s representation of both appellant
and a prior client created an actual conflict of interest and denied appellant
effective assistance of counsel.  We
affirm.








I.  Factual And Procedural Background

The incident giving rise to this case occurred in October
1998, within the prison walls where appellant was incarcerated.  According to Officer Cynthia Joyner, who was
working near appellant=s cell, appellant began to curse and yell at her.  Soon thereafter, Officer Virgil McMullen
arrived and suggested that Officer Joyner take a short break to get a drink of
water.  Just as Officer Joyner returned
to the cell block, appellant hurled a liquid substance through the bars of his
cell and onto Officer McMullen, who was standing in front of appellant=s cell.  According to Officer McMullen, appellant
urinated into a milk carton and then threw its contents at him.  In response to appellant=s actions, two other officers
searched appellant=s cell and found three sharp objects known as Ashanks@ C deadly weapons used by inmates to
cause bodily injury and, in some cases, death. 


Shortly after the incident, appellant signed a written
confession in which he 
admitted possessing the shanks, purportedly for his own
protection against the guards.  A few
weeks later, however, appellant wrote a letter to the prison warden, stating
that the shanks were not his and that he had been holding them for someone
else.  

In March 1999, appellant was indicted with the offense of
possession of a deadly weapon in a penal institution.  In the jury trial that followed, appellant
testified that while the guards were standing outside appellant=s cell, inmate Oscar Torres pushed
the shanks through holes in the wall connecting appellant=s cell with Torres=s cell.  Appellant testified that he quickly hid the
shanks and then threw the substance on Officer McMullen, so the officers would
search his cell and find the shanks. 
Appellant further testified that his written confession was a lie and
that he did not tell the officers Torres had pushed the shanks into his cell
because he feared retaliation from Torres and his prison gang. 








A jury found appellant guilty as charged and assessed
punishment at sixteen years= confinement in the Texas Department of Criminal Justice,
Institutional Division.  Appellant filed
a motion for new trial based on an alleged conflict of interest which his
counsel had raised twice and the court had rejected before trial.  

About three weeks before the scheduled trial date, appellant=s appointed counsel, Gail Huff, filed
a motion to withdraw stating she had an actual conflict of interest.  The trial court held a pretrial hearing on
the matter.  Huff stated she wished to
withdraw as appellant=s trial counsel based on an actual conflict of interest that
existed as a result of her prior representation of another, unidentified
inmate.  When Huff refused to reveal the
nature of the conflict or her prior client=s name, the trial court denied her
motion to withdraw.  The trial court,
however, stated that Huff would be allowed to withdraw as counsel for the other
inmate, if necessary.  

On June 26, 2000, the scheduled trial date, Huff reurged her motion to withdraw.  Initially, she again refused to disclose the
name of her other inmate client.  As the
hearing proceeded, however, she revealed the other inmate=s name to the court reporter and,
eventually, she wrote the name on a piece of paper and handed it to the trial
judge.  The inmate client was Oscar
Torres C the same inmate appellant claimed
placed the shanks in his cell.  Still,
Huff did not explain the nature of the actual conflict that she claimed existed
as a result of her prior representation of Torres.  Again, the trial court denied Huff=s motion to withdraw as appellant=s counsel, and the case proceeded to
trial. 

After the trial, appellant reasserted the conflict as  grounds for a new
trial, and the trial court denied the motion. 
Appellant now raises three related points challenging the trial court=s rulings.

II.  Issues Presented on Appeal








In his first point of error, appellant contends the trial
court erred when it denied his trial counsel=s motion to withdraw based on an
actual conflict of interest.  In his
second point of error, appellant contends he was denied effective assistance of
counsel because his trial counsel was impaired with an actual conflict of
interest.  In his third point of error,
appellant argues the trial court erred in denying his motion for new trial
based on an actual conflict of interest arising out of his trial counsel=s prior representation of Torres.  Appellant presents these points together with
the same argument and authorities. 
Because all three points rest on whether appellant=s trial counsel was impaired with an
actual conflict of interest, thereby denying him effective assistance of
counsel, we address these points together.  See Jordan v. State, 883
S.W.2d 664, 665 (Tex. Crim. App. 1994) (stating that
motion for new trial without hearing or any supporting proof is not enough to
show that actual conflict of interest existed and trial court abused its
discretion in denying the motion for new trial); Lerma
v. State, 679 S.W.2d 488 (Tex. Crim. App.
1982) (holding that failure to grant motion to withdraw in case of direct
conflict of interest denies appellant his right to effective assistance of
counsel).  As a threshold issue, however, we
must determine the applicable standard of review. 

III. 
Standard of Review: 
Ineffective Assistance of Counsel Based on an Actual Conflict of
Interest

 

The Sixth Amendment to the United States Constitution
guarantees in all criminal prosecutions that the accused shall have the right
to reasonably effective assistance of counsel. 
Strickland v. Washington, 466 U.S. 668, 686 (1984); Monreal v. State, 947 S.W.2d 559, 564 (Tex. Crim. App. 1997); Nethery
v. State, 29 S.W.3d 178, 188 (Tex. App.CDallas 2000, pet. ref=d). 
The Sixth Amendment also guarantees a defendant the right to Aconflict‑free@ representation.  Ex Parte
McCormick, 645 S.W.2d 801, 802 (Tex. Crim. App.
1983).  The mere physical presence
of an attorney does not fulfill the Sixth Amendment=s guarantee when the advocate=s conflicting obligations have
effectively sealed his lips on crucial matters.  Holloway v. Arkansas, 435 U.S. 475, 490 (1978). 








The vast majority of claims alleging ineffective assistance
of counsel fall within the familiar Strickland standard.  See Strickland, 466 U.S. at
668.  Under this standard, to prove
ineffective assistance of counsel, appellant must show that (1) counsel=s representation or advice fell below
objective standards of reasonableness; and (2) the result of the proceeding
would have been different but for trial counsel=s deficient performance.  Strickland, 466 U.S.
at 688B92.  Moreover, the defendant bears the burden of
proving his claims by a preponderance of the evidence.  Jackson v. State,
973 S.W.2d 954, 956 (Tex. Crim. App. 1998).  

Although Strickland governs claims of ineffective
assistance of counsel based on attorney error, certain claims of ineffective
assistance of counsel involving conflicts of interest are controlled by Cuyler v. Sullivan, a case the United States Supreme
Court decided four years before Strickland. 
See Cuyler v. Sullivan, 446 U.S. 335
(1980).  Under Cuyler,
a defendant demonstrates a violation of his right to reasonably effective
assistance of counsel based on a conflict of interest if he can show that (1)
his counsel was burdened by an actual conflict of interest; and (2) the
conflict had an adverse effect on specific instances of counsel=s performance.  Cuyler, 446 U.S. at 348B50.  Until a defendant shows his counsel actively
represented conflicting interests, he has not established the constitutional
predicate for his claim of ineffective assistance.  Id. at 350.  A showing of the Apossibility of a conflict of interest@ is not sufficient to overturn a
criminal conviction.  See id.  But, if an appellant shows an actual
conflict, prejudice is presumed.  Id.  An actual conflict of interest exists if
counsel is required to make a choice between advancing her client=s interest in a fair trial or advancing other interests to the detriment of her client=s interest.  See Monreal v.
State, 947 S.W.2d 559, 564 (Tex. Crim. App.
1997); Perillo, 205 F.3d 775, 781 (5th Cir.
2000).  The conflict, however, must be
more than merely speculative.  James v. State, 763 S.W.2d 776, 778B79
(Tex. Crim. App. 1989). 








The first step in
our analysis is to decide which standard C Cuyler or Strickland C applies
to the conflict of interest at issue in this case.  The main difference between the Strickland test and
the Cuyler test is that there is a
lesser burden of proof when the claim of ineffective assistance of counsel
involves a conflict of interest than when a claim is based on attorney
error.  Monreal
v. State, 923 S.W.2d 61,64 (Tex. App.CSan Antonio 1996), aff=d, 947 S.W.2d 559 (Tex. Crim.
App. 1997).  Under Strickland,
prejudice is not presumed.  See
Strickland, 466 U.S. at 692. 
Instead, the defendant must show there was error and the error was Aso serious as to deprive the
defendant of a fair trial, a trial whose result is reliable.@ 
Id. at 687.  In contrast, under Cuyler,
a defendant need only show that his counsel=s performance was Aadversely affected@ by a conflict of interest.  See Cuyler,
446 U.S. at 349B50.

The most likely scenario for a conflict of interest to
develop is when an attorney represents two co-defendants in the same case,
i.e., multiple or joint representation.  See
Cuyler, 446 U.S. at 335.  Neither the State nor appellant set forth
which standard should apply in this case. 
Nor does our research reveal any Texas cases addressing
the issue of which standard to apply in cases involving conflicts between the
interests of an attorney=s
present client and the interests of a prior client.  However, at least one Texas court has
addressed the issue of whether Cuyler should
apply beyond cases which involve joint representation of co-defendants in the
same criminal proceeding and has declined to expand its application.  See Monreal, 923 S.W.2d at 64.








The San Antonio
Court of Appeals in Monreal v. State
followed the Fifth Circuit=s
opinion in Beets v. State, 65 F.3d at 1258, 1271 (5th Cir. 1995), declining to expand Cuyler to attorney self-interest conflicts. 
See Monreal, 923 S.W.2d. at 61.  In Beets, the Fifth Circuit determined
that the Strickland standard best addressed attorney self-interest
conflicts.  See Beets, 65 F.3d at 1271. 
According to the Fifth Circuit, AStrickland more
appropriately gauges an attorney=s conflict of interest that springs not from multiple client
representation but from a conflict between the attorney=s personal
interest and that of his client.@  Id.  The Monreal court observed  that, Aunlike those situations
where an attorney undertakes to simultaneously represent multiple criminal
defendants, the risk of harm or prejudice to the client is not as great.@  See Monreal,
923 S.W.2d at 61 (citing Beets, 65 F.3d at 1271).  The Texas Court of Criminal Appeals affirmed
the Monreal court=s decision.  Though it did not expressly hold that Cuyler is not the appropriate standard for conflicts
arising from something other than joint representation, it found Athe Court of Appeals, [in
applying Strickland,] applied the correct legal standard and
considered all of the relevant factors.@  See Monreal,
947 S.W.2d at 565.

Recently, the United
States Supreme Court impliedly addressed this precise issue in Mickens v. Taylor, CU. S.C, 122 S. Ct. 1237
(2002).  Mickens
filed a petition for writ of habeas corpus, alleging, among other things, that
he was denied effective assistance of counsel at his murder trial because one
of his court-appointed attorneys had a conflict of interest arising from
concurrent representation of another client. 
Id., 122 S. Ct. at 1239B40.
 Mickens
claimed that his lead trial attorney, Bryan Saunders, was representing Mickens=
juvenile victim, Hall, on an assault and concealed-weapons charge at the time
of the murder.  Id.  Saunders had been appointed to represent Hall
about ten days before Hall was murdered. Id.  Saunders had met with Hall once for about
twenty minutes.  Id.  Shortly after Hall=s body was discovered, the
juvenile court dismissed the charges against him, noting on the docket sheet
that Hall was deceased.  Id.  The one-page docket sheet also listed
Saunders as Hall=s
counsel.  About a week later, the same
trial court appointed Saunders to represent Mickens,
the man accused of murdering Hall.  Id.  








The question
presented in Mickens=s habeas petition was what
a defendant must show in order to demonstrate a Sixth Amendment violation when
the trial court failed to inquire into a potential conflict of interest about
which it knew or reasonably should have known. 
Id., 122 S. Ct. at 1239.  The Mickens
court found the trial court=s
failure to make the mandated inquiry did not reduce the defendant=s burden of proof and
denied habeas corpus relief.  Id., 122 S. Ct. at 1243B45.  Although the issue was not directly before
the Court, Mickens=s case was presented and
argued on the assumption that Cuyler would be
applicable, thus requiring a showing of deficient performance, but not
requiring, as Strickland does in other ineffectiveness-of-counsel cases,
a showing of probable effect upon the outcome of the trial. Mickens, 122 S. Ct. at 1245B46.  The Court noted that this assumption was not
unreasonable in light of the holdings of courts of appeals, which have applied Cuyler Aunblinkingly@ to Aall kinds of alleged
attorney ethical conflicts.@  Mickens, 122 S. Ct. at 1245B46
(citations omitted).  The Court
explicitly stated that the language of Cuyler
itself does not clearly establish, or indeed even support, such an expansive
application.  Id.  








In Cuyler and in previous cases,[1]
the Supreme Court has stressed the high probability of prejudice arising from
multiple, concurrent representation, and the difficulty of proving prejudice. Mickens,
122 S. Ct. at 1245B46
(citations omitted).  The Court
drew a distinction between concurrent representation and prior representation
by stating that even the Federal Rules of Criminal Procedure treat these two
situations differently, requiring a trial court to inquire into the likelihood
of conflict whenever jointly charged defendants are represented by a single
attorney (Rule 44(c)), but not requiring such an inquiry when counsel
previously represented another defendant in a substantially related matter,[2]
even when the trial court is aware of the prior representation.  See id.  The Supreme Court explained that A[t]he purpose of our
Holloway and Cuyler exceptions from the
ordinary requirements of Strickland, however, is not to enforce the
Canons of Legal Ethics, but to apply needed prophylaxis in situations where Strickland
itself is evidently inadequate to assure vindication of the defendant=s Sixth Amendment right to
counsel.@  Mickens, 122 S. Ct. at 1246; see also Nix v. Whiteside, 475 U.S.
157, 165 (1986).  However, because
the Court  resolved
the case only on the grounds on which it was presented, the issue of whether Cuyler should be extended to cases of successive
representation remains an open question. 
See Mickens, 122 S. Ct. at 1246.   In Cuyler, the Supreme Court
discussed Fourteenth Amendment (and thereby Sixth Amendment) ineffective‑assistance‑of‑counsel
claims in the context of a defense lawyer who had a conflict of interest
arising from representation of multiple clients.  446 U.S. at 335.  Texas follows the Cuyler
analysis.  See Monreal,
947 S.W.2d at 564B65.  In Cuyler, two defense lawyers represented three
defendants in three trials; the defendants were tried one at a time.  Id. at 565.  The defendant in the first trial, Sullivan,
claimed on appeal that the lawyers compromised his defense by, among other
things, not calling defense witnesses so that prosecutors would not learn their
testimony for use in the two subsequent trials. 
Id.  At a hearing, one of
the lawyers admitted that his decision not to call defense witnesses was
affected by his concern that revealing those witnesses= testimony would benefit the
prosecution in the other two trials.  Id. at 566. 
The Court acknowledged that Sullivan did not object to multiple representation until after trial.  Id. 
Nevertheless, the Court found the Fourteenth Amendment was violated
if Sullivan could Ademonstrate that an actual conflict of interest [occurred
that] adversely affected his lawyer=s performance.@ 
Cuyler, 446 U.S. at 348.  

When a lawyer undertakes simultaneous representation of
multiple criminal defendants, the risks of prejudice to one client or the other
are so great that the law imposes an automatic presumption of prejudice.  Id. at 349.  This prejudice is perhaps best illustrated in
those cases in which there is a blame‑shifting defense C one of the defendants claims the
other committed the offense.  See Monreal, 923 S.W.2d at 64.  If a lawyer represents two or more
co-defendants in the same matter, she is legally and ethically deprived of
utilizing the time‑honored defense of blaming the other defendant.  Id.  Under those circumstances, the automatic
presumption of prejudice is quite valid. 
Id.  However, that is not
the situation now before us.  








Appellant was charged with possession of a deadly weapon in a
penal institution.  There were no
co-defendants.  Moreover, it is
not possible to identify from the face of the record an actual conflict of
interest arising from appellant=s counsel=s prior representation of Torres.  Given this gaping hole in
our record, the Supreme Court=s
reasoning in Mickens, and the meaning behind
the Cuyler test, we find that Strickland,
not Cuyler, should apply.  See Mickens,
122 S. Ct. at 1242B46; Cuyler,
446 U.S. at 335; see also Kegler v. State,
16 S.W.3d 908, 912 (Tex. App.CHouston [14th Dist.] 2000, pet ref=d) (finding Strickland to be
appropriate standard of review because defendant could not show actual conflict
from record).

IV. 
Ineffectiveness Under Strickland

To prove ineffective assistance of counsel under the Strickland
standard, appellant must show not only that counsel=s representation or advice fell below
objective standards of reasonableness but also that the result of the
proceeding would have been different but for trial counsel=s deficient performance.  Strickland, 466 U.S.
at 688B92.  Appellant must prove both prongs of Strickland
by a preponderance of the evidence in order to prevail.  See Tong v. State, 25
S.W.3d 707, 712 (Tex. Crim. App. 2000).  Failure to make the required showing of
either deficient performance or sufficient prejudice defeats the
ineffectiveness claim.  See McFarland
v. State, 928 S.W.2d 482, 500 (Tex. Crim. App.1996).  








Appellant claims he was denied effective assistance because
his attorney had represented Torres on other charges unrelated to appellant=s case.  After representing Torres in an unrelated
matter, Huff was appointed to represent appellant on the charge of possession
of a deadly weapon in a penal institution. 
Appellant=s defense was that Torres allegedly pushed the shanks into
his cell, through a hole in the wall that divided the two cells, and appellant
could not tell the guards the truth for fear of retaliation from Torres and his
gang.  Appellant claims Huff was impaired
by a direct conflict because, on one hand, appellant had an interest in blaming
Torres to possibly exculpate himself, or at least mitigate the seriousness of
the offense; and, on the other hand, Torres had an interest in not being
implicated in order to avoid the risk of disciplinary proceedings with the
prison or possible prosecution in court. 
           Notably, appellant=s only complaint on appeal is that
his counsel was ineffective because she was impaired with an actual conflict of
interest; appellant does not claim his trial counsel was ineffective in
presenting the particulars of her alleged conflict.  Consequently, appellant must show what
information would have benefitted him and how his
trial counsel could have represented him more effectively had counsel not been
impaired with a conflict or if appellant would have had entirely different
trial counsel representing him. 

Absent special circumstances, unless the trial court knows or
reasonably should know that a particular conflict of interest exists, it has no
affirmative duty to make an inquiry.  See
Calloway v. State, 699 S.W.2d 824, 829B30 (Tex. Crim.
App. 1985).  When a lawyer admits to a
conflict of interest, the court should hold a hearing to explore that conflict.  Kelly v. State,
640 S.W.2d 605, 611 (Tex. Crim. App. 1982).  If the accused or his counsel make a timely
objection and request separate counsel on the basis of a potential conflict of
interest, the trial court must investigate or inquire about this request.  See Holloway, 435 U.S. at  486B90. 
When an attorney is unable to cross‑examine a government witness  or is
hindered in such a cross‑examination because of a privilege arising from
counsel=s prior representation of the
witness, the defendant is denied effective representation as a matter of
law.  United States
v. Martinez, 630 F.2d 361, 362 (5th Cir. 1980).  

Huff filed a motion to withdraw as appellant=s counsel in the case, and the trial
court held a hearing on this motion.  At
this hearing, Huff claimed a conflict existed, but offered no explanation of
the nature or particulars of it C not even a reference to the general
nature of the conflict.  Huff even
refused to reveal the name of the other inmate until the day of the trial.  Under these circumstances, the trial court
was not obligated to conduct any further inquiries to ascertain whether appellant=s counsel should have been
removed.  A mere assertion at trial that
an actual conflict exists, without a more particularized indication of the
nature of the conflict, does not relieve a defendant of the necessity of
demonstrating that an actual conflict exists. 
See Calloway, 699 S.W.2d at 829B31.








The facts in this case are similar to the facts in Wilson
v. State, 786 S.W.2d 74 (Tex. App.CEl Paso 1990, no pet.).  In that case, the defendant was charged with
possession of cocaine with intent to deliver. 
Id. at 76.  Wilson=s attorney also represented the
co-defendant, Goolsby.  When Wilson=s attorney realized there might be a
conflict, the court appointed another attorney to represent Goolsby.  However, Wilson=s attorney stated a conflict of
interest arose in representing Wilson during Wilson=s trial, but that he could not reveal
the nature of the conflict due to his continuing obligation to Goolsby.  Id.  The attorney claimed he was prevented
from calling Goolsby as a witness to provide
favorable and exculpatory evidence for Wilson because of the conflict of
interest.  Id.  The Wilson court held that no conflict
of interest was shown because Wilson=s attorney=s assertions with regard to his
inability to use the testimony of Goolsby were
entirely speculative and would not have aided Wilson.  Id. 

Here, appellant claims Torres not only would have admitted
his ownership of the shanks but also would have testified that he gave them to
appellant to hold temporarily.  Torres
was not called as a witness for the government or the defense and there is no
indication in the record of what he would have said.  The record does not even indicate that
appellant=s trial counsel wanted to call Torres
as a witness for the defense or that she thought calling Torres would have been
advisable absent the alleged conflict. 
Although appellant=s counsel did not object on this basis, it is possible she
may not have called Torres as a witness because Torres would have had to
implicate himself in order to provide appellant with a possible defense.  Even that would not have been sufficient,
however, because appellant had to show some actual conflict, not merely a
speculative conflict of interest.  See
James, 763 S.W.2d at 778; Wenzy
v. State, 855 S.W.2d 52, 56 (Tex. App.CHouston [14th Dist.] 1993, pet. ref=d). 
Even if Torres had been called, it is not at all clear that his
testimony would have benefitted appellant.








Moreover, appellant=s assertions with regard to his
counsel=s inability to cross-examine the
witnesses about their knowledge of Torres are purely speculative.  In order to determine whether appellant=s attorney refrained from
cross-examination in certain areas and whether her supposed inability to
cross-examine more thoroughly could be considered detrimental to appellant, we
must be able to discern from the record the nature of the information that
could have been developed by counsel. 
Appellant does not cite to anything in the record that would evince any
useful information that could have been uncovered or utilized through more
effective cross-examination.  Nor does
the record show that the State=s witnesses held information that would have been beneficial
to appellant, but detrimental to Torres, e.g., that Torres was a member of a
gang.

Appellant=s motion for new trial merely asserted that a conflict of
interest may have existed C it did not identify, much less explain, what the alleged
conflict involved.  Moreover, appellant
did not attach any supporting affidavits to his motion for new trial.  Although there was a hearing on the motion,
no testimony was developed to show that Huff=s past representation of Torres had
anything to do with her decision not to cross-examine the State=s witnesses.  We are not aware of any confidential or
privileged information Huff may have obtained during her representation of
Torres or how she would have been forced to divulge such information in
cross-examining the State=s witnesses in appellant=s case.  

Nor does the record indicate whether or how an actual
conflict prevented Huff from questioning appellant.  During direct examination, appellant told his
version of the events.  He explained that
the shanks belonged to Torres, not to him. 
He further testified that the reason he did not tell the officers the
truth at the time was because he feared retaliation from Torres and his gang.  Though appellant now asserts the defenses of
duress and necessity, he did not indicate at trial that he even wished to raise
these defenses and the evidence does not support either defense.








At best, the record raises a concern of a possible conflict
of interest but not an actual conflict of interest.[3]  Although the record indicates there could
possibly be a conflict as a result of Huff=s prior representation of Torres, the
record is not clear as to what the representation of Torres involved.  The trial court did everything it was
required to do.  Upon being informed that
an actual conflict existed, the court conducted a hearing. Despite ample
opportunity to identify and explain the alleged conflict, appellant=s trial counsel refused to reveal
even the general nature of the conflict or to explain the adverse impact, if
any, on appellant as a result of counsel=s prior representation of
Torres.  Without more particularized
information, we cannot determine how or whether counsel was impaired in her
representation of appellant.  See Fulgium v. State, 4 S.W.3d 107 (Tex. App.CWaco 1999, pet ref=d) (holding that implied conflicts
are insufficient to support claim of ineffective assistance).  

As for the prejudice prong under Strickland, under the
facts this case, we cannot find that even if appellant would have had different
counsel, or even if 
his trial counsel had acted differently, the result would have
been any different.  See Strickland, 466
U.S. at 688B92. 
Appellant=s claim that Torres would have given favorable testimony is
speculative.  Moreover, the jury could
have found appellant guilty of possession of a deadly weapon in a penal
institution regardless of who gave him the shanks or
who owned the shanks because appellant signed a written confession admitting to
possession of them.  See Brown v.
State, 732 S.W.2d 733, 734 (Tex. App.CHouston [14th ] 1987, pet. ref=d). 
Likewise, appellant=s own confession and letter to the
prison warden effectively undermined any claim of duress.  Nothing Torres could have said, even if
called as a witness, could have exonerated appellant. 








Appellant has not proven deficient performance by his trial
counsel or a reasonable probability that, but for counsel=s alleged unprofessional errors, the
result of the proceeding would have been different.  Thus, he has failed to satisfy either prong
of Strickland.  Because the record does not show that
appellant=s counsel was ineffective due to an
actual conflict and because this case does not present a joint representation
situation as in Cuyler,[4]
there has been no violation of appellant=s right to reasonably effective
assistance of counsel.  Furthermore, the
trial court did not err in denying the motion to withdraw and the motion for
new trial, both of which were based on an alleged actual conflict of
interest.  See Lerma,
679 S.W.2d at 488; Jordan, 883
S.W.2d at 665.  Accordingly, we overrule
all of appellant=s points of error.

Having found no error, we affirm the trial court=s judgment. 

 

 

 

 

/s/        Kem Thompson Frost

Justice

 

Judgment rendered
and Opinion filed June 27, 2002.

Panel consists of
Justices Anderson, Hudson, and Frost.

Publish C Tex.
R. App. P. 47.3(b).

 

 











[1]  In Holloway
v. Arkansas, the Supreme Court considered the applicable standard in the
context of an attorney=s simultaneous representation of the interests of
three co-defendants having interests in direct conflict with one another.  435 U.S. 475 (1978).  Defense counsel objected that he could not
adequately represent the divergent interests of three co-defendants.  Id. at 478.  Without further inquiry, the trial court
denied defense counsel=s motions for the appointment of separate counsel and
refused to allow counsel to cross-examine any of the defendants on behalf of
the other two.  Id.  The Holloway court deferred to the judgment  of counsel
regarding the existence of a disabling conflict, recognizing that a defense
attorney is in the best position to determine when a conflict exits.  Id. at 485.  The Supreme Court presumed that the conflict,
Awhich[the defendant] and his counsel tried to avoid by
timely objections to the joint representation, undermined the adversarial
process.@  Id. at 490. 
This presumption was justified because joint representation of
co-defendants with conflicting interests is inherently suspect, and because
counsel=s conflicting obligations to multiple defendants Aeffectively seal his lips on crucial matters@ and make it difficult to measure the precise harm
arising from counsel=s errors.  Id.  Holloway thus creates an automatic reversal
rule only when defense counsel is forced to represent co-defendants over his
timely objection, unless the trial court has determined that there is no
conflict.  Id.  at 488.  Unlike Holloway, the case now before
us does not involve joint representation of co-defendants. The alleged
conflict is based on successive representation. 

 





[2]  We note that
the facts in our case do not even reveal whether appellant=s counsel represented Torres in a matter that was
substantially related to appellant=s
matter. 





[3]  In some cases,
courts have found enough evidence in the record to support an actual
conflict of interest.  See Ex parte McCormick,
645 S.W.2d 801, 803B06 (Tex. Crim. App. 1983)
(finding potential for conflict became actual conflict of interest due to
defense counsel=s trial strategy); Ex parte
Parham, 611 S.W.2d 103, 104B05 (Tex. Crim. App. 1981)
(finding actual conflict of interest where one brother=s testimony would exculpate the other by proving he
did actual shooting in murder case).  In
contrast, there is no evidence in this case that the testimony of either
appellant or any of the state=s witnesses would inculpate Torres or exculpate
appellant.  See also Amaya v. State, 677 S.W.2d 159, 161B62 (Tex. App.CHouston [1st Dist.] 1984, pet. ref=d) (finding actual conflict of interest when
discrepancies between testimony of various witnesses were not exploited because
it would have hurt other co‑defendants).





[4]  In any event, even
if we had applied Cuyler, instead of Strickland,
appellant=s claims would have failed because the
record does not reveal an actual conflict C the requirement for
Cuyler=s first prong.  See Cuyler, 446
U.S. at 348.