IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-2030-03






NOEL BETANCORT RAMON, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FOURTH COURT OF APPEALS


KENDALL COUNTY





 Johnson, J., delivered the unanimous opinion of the Court.


O P I N I O N 



 During appellant's trial for aggravated sexual assault, the trial court allowed the prosecutor
to take the stand and testify about a collateral matter, over defense objection. The defense was not
permitted to cross-examine the prosecutor, and after a sidebar discussion, the trial court sustained
the defense motion to strike the prosecutor's testimony. The court instructed the jury to disregard
the prosecutor's testimony, but denied the defense request for a mistrial. The prosecutor continued
to prosecute the case and made reference to the subject of her testimony during closing arguments. 
The jury convicted appellant of one count of aggravated sexual assault. Tex. Pen. Code §22.021. 
The trial court assessed appellant's sentence, enhanced by prior felony convictions, at life
imprisonment. 

 On appeal, appellant argued that the trial court should have granted a mistrial based on the
prosecutor's actions, claiming that they deprived him of a fair trial. However, the court of appeals
upheld the judgment of the trial court, holding that the prosecutor's testimony did not affect
appellant's substantial rights, and that the trial court therefore did not abuse its discretion in denying
the motion for a mistrial. Ramon v. State, No. 04-02-00219-CR, 2003 Tex. App. LEXIS 7892 (Tex.
App. - San Antonio, September 10, 2003)(not designated for publication). 

 We granted review to determine whether the court of appeals erred in finding no harmful
error. (1) The question is not one of harm per se, however, but rather whether the court of appeals erred
in finding that the trial court did not abuse its discretion when it denied the motion for a mistrial. 
As we recently noted, "the question of whether a mistrial should have been granted involves most,
if not all, of the same considerations that attend a harm analysis." Hawkins v. State, 135 S.W.3d 72,
77 (Tex. Crim. App. 2004). Therefore, as we did in Hawkins, we will address the issue by applying
the test articulated in Mosley v. State, 983 S.W.2d 249 (Tex. Crim. App. 1998), cert. denied, 526
U.S. 1070, 143 L. Ed. 2d 550, 119 S. Ct. 1466 (1999). 

 Mosley involved prosecutorial misconduct in the form of improper jury argument, but the
holding is equally applicable to the prosecutor's testimony in this case. In determining whether the
argument warranted a mistrial, the Mosley Court balanced three factors:

 (1) severity of the misconduct (the magnitude of the prejudicial effect of the
prosecutor's remarks), (2) measures adopted to cure the misconduct (the efficacy of
any cautionary instruction by the judge), and (3) the certainty of conviction absent the
misconduct (the strength of the evidence supporting the conviction). 


Id. at 259. 

 In this case, the prosecutor's request to testify was triggered by the admission of a telephone
message that she had left with Dr. Chad Hainley, the state's DNA expert. The record indicates that
Dr. Hainley called the prosecutor to ask whether the state would be sending any samples of other
individuals' DNA for comparison purposes. In response, the prosecutor called Dr. Hainley's office,
and left a message that was recorded in Dr. Hainley's office as "Noel Ramon case. The grandson
and his roommate had access to the home, but they only care about suspect's DNA." 

 The defense introduced the message, apparently to show that the state had focused its
investigation on the defendant and ignored evidence that potentially inculpated others. The
prosecutor argued that she needed to testify in order to correct a "false impression" left by the
defense's introduction of the message. She argued that, at the time of the message, she understood
that appellant's defense at trial was to be that he was not present at the scene of the crime, and
therefore that the state was concerned only with defeating his claim by showing the presence of his
DNA. This was the substance of her testimony, which the court eventually instructed the jury to
disregard. 

 Later in the trial, the state recalled Dr. Hainley to rebut the testimony of the defense DNA
expert. On cross-examination, when asked whether he had tried to obtain any "standards" other than
the defendant's in this case, Dr. Hainley explained that he had contacted the prosecutor to see if other
DNA samples would be submitted. During her closing argument, the prosecutor said: "With regard
[sic] Chad Hainley called me because he was concerned, Chad Hainley called me to see if we were
going to submit any other samples, not because he was concerned."

 In its opinion, one judge writing and two judges concurring in the judgment, the court of
appeals ruled that the trial court did not abuse its discretion when it denied appellant's motion for
mistrial because appellant had failed to show how the prosecutor's remarks prejudiced his case. In
her concurring opinion, Justice Stone chastised the prosecutor for her unprofessional behavior.

 I believe that permitting the prosecutor to testify was error, and as to the prosecutor,
a violation of Rule 3.08(a) of the Texas Disciplinary Rules of Professional Conduct.
See TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08(a), reprinted in TEX.
GOV'T. CODE ANN., tit. 2, subtit. G, app. A (Vernon 1998). The circumstances
giving rise to the prosecutor's request to testify did not, in my opinion, present
"extraordinary circumstances or . . . compelling reasons." See Riddle v. Cockrell, 288
F.3d 713, 721 (5th Cir. 2002) (holding that a prosecutor should be allowed to testify
only in extraordinary circumstances). If the State perceived the introduction of
Exhibit 11 as impeachment of the DPS laboratory analysis or the prosecutor's
motive, the State could have easily discredited the attempted impeachment through
its questioning of the State's forensic expert. Taking the "highly unusual and
potentially prejudicial" route of allowing the sole prosecutor to take the witness stand
was simply unnecessary. 


Ramon v. State, 2003 Tex. App. LEXIS 7892 at *10-11 (Stone, J., concurring in judgment).

 In his petition for discretionary review, appellant argues that, in light of this Court's recent
decision in Gonzalez v. State, 117 S.W.3d 831 (Tex. Crim. App. 2003), he has met his burden of
showing that the prosecutor's testimony prejudiced his case. In Gonzalez, the defense counsel was
disqualified before trial began because he was expected to testify to a contested matter bearing
directly on the defendant's guilt. The appellant in Gonzalez argued that the trial court's decision to
disqualify his attorney interfered with his constitutionally guaranteed right to the counsel of his
choosing. Id. at 836-37. However, this Court looked to United States Supreme Court precedent, and
found that "the presumption in favor of petitioner's counsel of choice may be overcome not only by
a demonstration of actual conflict but by a showing of serious potential for conflict." Id. at 844,
citing Wheat v. United States, 486 U.S. 153, 163-64, 100 L. Ed. 2d 140, 108 S. Ct. 1692 (1988). 
This Court found that the record supported the trial court's decision to disqualify defense counsel:

 If counsel were to have testified, the State would have been prejudiced not only by
the undue weight jurors might have attach [sic] to counsel's testimony, but also by
the confusion that would most likely have resulted during argument regarding
whether counsel was summarizing evidence or further testifying as to personal 

 knowledge. . . . The State would have been prejudiced by the inability to clarify counsel's
testimony and impeach counsel's credibility.


Gonzalez, 117 S.W.3d at 840.

 Appellant here argues that the same dangers that the Gonzalez court described in finding
potential prejudice produced a presumption of actual prejudice to his case when the prosecutor
testified, and then continued to prosecute the case. Furthermore, appellant asserts that by referring
to the subject of her testimony during closing arguments, the prosecutor improperly argued her own
credibility to the jury.

 We find the situation in Gonzalez distinguishable. In that case, the trial court made its
finding and the defense attorney was disqualified before the trial began, thereby averting the situation
that is before us in this case. The appellate court in Gonzalez was called upon to review the trial
court's determination that the potential for conflict necessitated the disqualification of counsel. 
According proper deference to the finding of the trial court, the court of appeals upheld that finding. 
 In this case, the trial court first ruled that the prosecutor could testify. Then, after the
prosecutor testified about the telephone message but refused to allow herself to be cross-examined,
the trial court instructed the jury to disregard the testimony, but overruled the defense motion for a
mistrial. Therefore, the court of appeals in this case was called upon to review the trial court's
failure to declare a mistrial, using an abuse of discretion standard. The court of appeals was unable
to find that the trial court abused its discretion. 

 We agree that the prosecutor's behavior was improper. (2) 

"The concepts of due process and fundamental fairness require a separation between
the State's advocates and its witnesses. The prosecutor who tries a case should not
testify as a witness in regard to a contested matter absent a showing that his
testimony is necessary. Such necessity generally involves a showing that the
testimony is important to the State's case or required to rebut the defendant's case
and that the need for the testimony could not reasonably have been anticipated. ... A
prosecutor who tries the case must take reasonable precautions to prevent himself
from becoming entangled in the trial as a witness. ... If, during the middle of trial, the
prosecutor's testimony becomes necessary, and the prosecutor does not withdraw
from participation, he should never argue his credibility to the jury. ... A prosecutor's
failure to follow the above principles seriously jeopardizes a defendant's right to a
fair trial. ... This conclusion is grounded upon the "recognition of the power and
influence [the prosecutor] exerts' in a criminal prosecution. ... Moreover, in addition
to the danger that the prosecutor's position may artificially enhance the credibility of
his testimony, the prosecutor's participation in closing arguments after the testimony
may generate confusion among the jury about whether the prosecutor is speaking as
an advocate or as a witness."


Brown v. State, 921 S.W.2d 227, 231 (Tex. Crim. App. 1996)(Keller, J.,
concurring)(citations omitted).


However, as the court of appeals below found, the subject matter of the prosecutor's testimony in
this case was not of great consequence to the outcome of the case. 

 In regard to the second Mosley factor, we find that the trial court's instruction to disregard
was sufficient to cure the error in allowing the prosecutor to testify in this case. The prosecutor's
reference to Dr. Hainley during closing argument could be interpreted as a reference to Dr. Hainley's
testimony when he was recalled, rather than to the prosecutor's own testimony. It is a well-accepted
principle that the admission of improper evidence will not require reversal if the same facts are
proved by "other and proper" testimony. Alvarez v. State, 511 S.W.2d 493, 498 (Tex. Crim. App.
1974).

 Finally, the third factor in the Mosley balancing test requires us to determine the likelihood
that appellant would have been convicted absent the misconduct. The evidence against appellant
included eyewitness identification placing him at the scene of the crime. While the victim, who was
elderly and appeared to have problems with her memory, could not identify him by the time of trial,
the eyewitness, who knew appellant well, testified that he had seen appellant leaving the victim's
bedroom, fastening his pants, immediately after the assault allegedly occurred. The victim told the
eyewitness that appellant had just sexually assaulted her, and the eyewitness called the police.

 DNA evidence placed appellant's sperm on one of the victim's bed sheets, and his palm
prints were found on the victim's headboard. While the prosecutor's testimony related to the fact
that there were numerous stains on the victim's sheets that did not contain appellant's DNA, this fact
by itself is not particularly exculpatory. The state's reasons for not going to the trouble to determine
the sources of the other stains are not necessarily relevant to the question of who assaulted the
victim. In this case, the fact that appellant's sperm was present on the victim's sheets was sufficient
to place him at the scene, supporting the eyewitness' statement. 

 Given the strength of the evidence against appellant, the court's instruction to the jury to
disregard the prosecutor's testimony, and the tangential nature of that testimony, we do not find an
abuse of discretion in the trial court's failure to declare a mistrial. Therefore, we affirm the judgment
of the court of appeals.

 

 Johnson, J. 

Delivered: December 15, 2004

En banc

Publish

 





1. "The court of appeals erred in finding no harmful error where the sole prosecutor called herself as a fact
witness to testify to a material issue in front of the jury, objected to being cross examined, resumed her advocate role
in the trial and then argued her credibility to the jury."
2. We further note that the same prosecutor's actions were at issue in another recent case before this Court. 
Flores v. State, 90 S.W.3d 875 (Tex. App. - San Antonio, 2002). In that instance, the prosecutor called defense
counsel as a witness, arguing, as she did in this case, that it was necessary to correct a "false impression" left by the
defense. The court of appeals found the error harmless, but noted that an issue of "'false impressions' left by
defense counsel's questioning of witnesses is best addressed by skillful re-direct or re-cross examination by the State,
not by calling defense counsel as a witness." Id. at 884.